# City of Burlington and Burlington Electric Department v. Department of Employment and Training

[530 A.2d 573]

Nos. 84-527, 84-528

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes,\* JJ.**

Originally Filed January 16, 1987

Opinion Filed June 9, 1987

*Robert E. Fletcher* of *McNeil, Murray & Sorrell, Inc.,* Burlington, for Plaintiffs-Appellants.

---

\* Justice Hayes concurred in the end result but did not review the clarifying revisions made in response to the motion for reargument.

*Brooke Pearson* and *Steven Freihofner*, Montpelier, for Defendant-Appellee.

**Gibson, J.** The City of Burlington and the Burlington Electric Department (referred to collectively herein as appellant) appeal from two decisions of the Vermont Employment Security Board (Board) that the Unemployment Compensation Division had properly charged the accounts of the appellant for benefits paid to two claimants. We reverse and remand.

Appellant is a "reimbursable employer" under 21 V.S.A. § 1321(e) of the Unemployment Compensation Law (21 V.S.A. ch. 17). As such, it is not required to make contributions to the unemployment compensation fund, but must reimburse the fund for "benefits paid, including the full amount of extended benefits paid, attributable to service by individuals in [its] employ." 21 V.S.A. § 1321(e). Identical legal issues are presented in the two cases: (1) whether the Board was correct in determining that the first claims filed by claimants after leaving appellant's employ were "valid" claims, and (2) whether appellant was afforded a fair and adequate opportunity to be heard before the appeals referee. The pertinent facts follow.

In April 1981, Stephen Anyzeski left his employment as a first-class lineman with the City of Burlington for personal reasons. He filed a claim for benefits in August 1981, but failed to appear at a hearing before a claim examiner, and no benefits were granted. Anyzeski next filed a claim for unemployment benefits on April 21, 1982, after he had worked for five months at the Sugarbush Ski Area, a "contributing employer" (21 V.S.A. § 1321(a)), from which he was laid off for lack of work in April 1982. He was found to have "purged" his earnings requirement[1] by earning six times his weekly benefit amount and was eligible to collect benefits, since he was laid off for lack of work. He collected his first check for the week ending May 15, 1982. When Anyzeski filed his April 21, 1982 claim, the Vermont Department of Employment and Training (DET) did not notify the City of Burlington that it would be liable for any payments made to the claimant. In fact, the City was not notified that Anyzeski had filed a claim for benefits or of its potential liability until July 27, 1982, when DET sent

---

[1] 21 V.S.A. § 1344(a)(2).

the City its bill for payments to Anyzeski through the period ending July 1, 1982.

The fact pattern in the case of claimant Gary Ploof is similar. Ploof left his employment with the Burlington Electric Department February 19, 1982 and filed a claim for benefits on March 12, 1982. On March 26, 1982, Ploof was disqualified for benefits based on a claim examiner's determination that he had left his last employing unit without good cause attributable to his employer. He did not appeal this determination. On December 27, 1982, Ploof filed an additional claim for benefits, also on account of earnings from a subsequent contributing employer, at which time it was determined that he had purged his earnings requirement, and he was found eligible for benefits. The Department was not notified about Ploof's claim until it received a charge notice on January 3, 1983.

Appellant appealed the two decisions to the Vermont Employment Security Board, urging that DET had both misunderstood and misapplied Vermont statutory law and had, in addition, denied appellant due process of law in failing to give it notice of the hearings which had given rise to its liability.

In its statutory argument, appellant contends that DET incorrectly established each claimant's "base period" as of the date each filed his first claim.[2] In both cases, the first claims did not result in eligibility for compensation—in Anyzeski's case because he did not appear at his hearing, and in Ploof's case because he left his last employing unit without good cause attributable to his employer. Appellant argues that the failure of each claim to result in compensation means that neither was a "valid" claim for purposes of establishing each claimant's "benefit year."[3] DET coun-

---

[2] 21 V.S.A. § 1301(17)(A) defines a "base period" as "the period of fifty-two weeks ending with the day immediately preceding the first day of a claimant's benefit year." Reimbursable employers who have employed a claimant during the base period are liable for proportionate shares of the benefits paid to the claimant. 21 V.S.A. § 1321(c)(5).

[3] "Benefit year" and "valid claim" were, at the time of the events below, defined as follows:

"Benefit year", with respect to any individual, means the one year period beginning with the first day of the first week with respect to which the individual first files a valid claim for benefits in accordance with section 1346 of this title, and thereafter the one year period beginning with the first day of the first week with respect to which the individual next files such a claim for benefits after the termination of his last preceding benefit year.

ters that a claim is "valid" under 21 V.S.A. § 1301(16) so long as the individual has earned qualifying wages—that it is not necessary that the individual actually qualify for unemployment benefits when the claim is submitted.

■ We disagree with DET that a "valid claim" may be determined solely by reference to claimant's earnings and period of covered employment. The threshold earnings requirement in 21 V.S.A. § 1338 of twenty weeks of employment at wages of at least $35 is the basic element of a valid claim for unemployment compensation, but it is not the only requirement of the Unemployment Compensation Law. Section 1343 imposes numerous conditions that must be satisfied in order to qualify for coverage, and § 1344 details numerous disqualifications, including leaving the last employing unit voluntarily without good cause, gross misconduct connected with the work, and failure without good cause to apply for available, suitable work, among others. While there may be reasons in other contexts for DET to distinguish between claims that are invalid because of failure to earn qualifying wages and claims that are invalid because of disqualifying conditions, in the present context that distinction defies the logic and intent of the statutory scheme, read as a whole. "In construing a statute we consider it as a whole, and, if possible, give effect to every word, clause, and sentence." *State* v. *Teachout*, 142 Vt. 69, 72, 451 A.2d 819, 820 (1982) (citing *State* v. *Tierney*, 138 Vt. 163, 165, 412 A.2d 298, 299 (1980)).

The Unemployment Compensation Law contemplates that the "base period" of a claimant may subject an employer to paying a share of the costs of benefits to an employee who leaves the employer voluntarily and without good cause. 21 V.S.A. § 1321(c)(5)(A) provides as follows:

> (A) Proportionate allocation when fewer than all base-period employers are liable for reimbursement. If benefits paid to an individual are based on wages paid by one or more employers that are liable for payments in lieu of contribu-

---

A claim for determination of benefits payable shall be deemed to be a valid claim for the purposes of this subdivision if the individual has earned wages in employment by employers as provided in subdivision (2) of section 1338 of this title.

21 V.S.A. § 1301(16) (now 21 V.S.A. § 1301(16)(A) and (B)). Though 21 V.S.A. § 1301(16) has been amended since the events in question, it has not been materially changed.

tions and on wages paid by one or more employers who are liable for contributions, the amount of benefits payable by each employer that is liable for payments in lieu of contributions shall be an amount which bears the same ratio to the total benefits paid to the individual as the total base-period wages paid to the individual by such employer bear to the total base-period wages paid to the individual by all of his base-period employers.

The guiding principle of the process described in § 1321(c)(5)(A) is the proportional allocation of benefits payable by reimbursable employers. Under the approach advocated by DET, the base period would be established as of the date each claimant filed his first claim for benefits—in August 1981 for Anyzeski and on March 12, 1982 for Ploof—in each case, appellant being the most recent employer. The effect of this approach would be to allocate 100% of the benefits payable to each claimant to appellant as the reimbursable employer during the fifty-two weeks prior to that first claim, despite the fact that the claimants were found ineligible for benefits when they filed their first claims.

While this is a novel question in Vermont, courts in other states have addressed the issue. In *Kentucky Unemployment Insurance Commission* v. *Anaconda Aluminum Co.*, 433 S.W.2d 119 (Ky. 1968), the Kentucky Court of Appeals was faced with the question of determining what constituted a "valid claim" to trigger a benefit year. In that case, the State Unemployment Insurance Commission appealed from a lower court judgment holding that the company was not liable for unemployment insurance benefits because claims filed by employees during a strike were not allowable and did not trigger the commencement of a benefit year. The applicable statute, Ky. Rev. Stat. § 341.090(2), defined a "valid claim" as "any initial claim for benefits if the worker has satisfied the conditions required under subsection (5) of KRS 341.350." The Kentucky Unemployment Insurance Commission made essentially the same argument DET is making in the case at bar. The Court disagreed with the Commission, and in affirming the lower court decision, it held:

> "Valid" is not a technical word. It is defined as "Founded on truth or fact; capable of being justified, supported, or defended; not weak or defective; well-grounded; sound; good; as, a valid argument; a valid objection." The definition con-

tinues: "Having legal strength or force; executed with the proper formalities; legally sufficient or efficacious; incapable of being rightfully overthrown or set aside, as, a valid deed, covenant, title, marriage." Webster's New International Dictionary, Second Edition, Unabridged. Undoubtedly the General Assembly by using "valid," as so defined, in connection with "claim" intended its common and approved usage. Had it intended otherwise, it could have used only "claim," and the statute would then have the meaning insisted on by appellant.

*Anaconda*, 433 S.W.2d at 121.

The same result was reached by the Hawaii Supreme Court in *Berkoff* v. *Hasegawa*, 55 Hawaii 22, 514 P.2d 575 (1973), where the Court said:

> We hold that a valid claim for unemployment insurance benefits is filed and a benefit year established when a claimant has worked the required period of time, is eligible to receive benefits under the other provisions of HRS § 383-29, and is not disqualified for benefits under the provisions of HRS § 383-30. Where an initial determination is made that a claimant is ineligible or disqualified for benefits, no benefit year is established and the claim filed is not valid.

*Id.* at 29, 514 P.2d at 580. See also *Hartsville Cotton Mill v. South Carolina Employment Security Commission*, 224 S.C. 407, 411-13, 79 S.E.2d 381, 383 (1953) (a valid claim for unemployment compensation benefits upon which initial determination as to benefit year, weekly benefit amount and net maximum benefit amount can be made cannot be filed until claimant is eligible for benefits); cf. *In re Jullin*, 23 Wash. 2d 1, 14-15, 158 P.2d 319, 325 (1945) (since claimant did not establish facts necessary to justify unemployment compensation benefits, his purported claim never amounted to a completed, valid claim).

In *In re Jullin*, the Washington Supreme Court construed another unemployment compensation provision, a section providing for a waiting period requirement of one week during which the claimant was otherwise eligible for benefits.[4] Though the claimant filed early and was therefore denied payments, the Unemployment Compensation Division made an "initial determination,"

---

[4] Vermont has a similar provision, 21 V.S.A. § 1343(a)(4).

solely for the purpose of fixing the amount of benefits potentially payable to claimant during the benefit year, in the event claimant should again become unemployed for a week or more. *Id.* at 7, 158 P.2d at 322. The Court reversed, holding:

> If an individual is ineligible to receive any benefits at all under his claim, there is no foundation for giving him a status which will permit him in the future to apply for and receive payments computed solely on the basis of an "initial determination" predicated upon a prior invalid claim.

*Id.* at 17, 158 P.2d at 326. Although Vermont does not have precisely the same statutory provision as Washington, the rationale of the Washington Court fits the case before us.[5]

■ We hold that under 21 V.S.A. § 1301(16) the base year for each claimant should be determined with reference to applications that are "valid" in meeting both the earnings requirements under 21 V.S.A. § 1338 and all other requirements and qualifications for unemployment benefits. A claim that does not result in the granting of benefits may thus not trigger a benefit year and base period.

This holding does not dispose of the entire case, however, because on remand it may be determined that the base year computed as of the date of the first valid application for unemployment benefits still includes a period of employment with appellant. Appellant raises the additional question of whether the opportunity for a hearing *after* the compensation claims of Anyzeski and Ploof had been granted complied with the requirements of due process. In its decisions of November 29, 1983, reversing and remanding each appeal to an appeals referee, the Board concluded that the omission of notice to appellant was reversible error. The Board held:

> Time honored principles of due process of law and fundamental fairness clearly require notice to the employer as well as an opportunity to be heard. The only remaining question therefore is to determine the nature of the remedy to which the employer is entitled.

---

[5] We note that *Hartsville Cotton, Anaconda,* and *Berkoff* were all effectively reversed by subsequent legislation in their respective states. Such action does not, however, vitiate the interpretations of the statutes that were before the respective appellate courts.

■ We agree with the Board that the due process requirements of the Fourteenth Amendment apply to the granting or denying of unemployment benefits, *Graves* v. *Meystrik*, 425 F. Supp. 40, 47 (E.D. Mo.), *aff'd mem.*, 431 U.S. 910 (1977), and hold that the rights of the employer are protected along with those of the claimant. See *Brown* v. *Labor & Industrial Relations Commission*, 577 S.W.2d 90, 96 (Mo. App. 1978). We also agree with appellant, however, that the subsequent hearing before the appeals referee did not offer appellant due process of law since it improperly placed on appellant the burden of demonstrating that benefits should not have been paid to the two claimants.[6]

Appellant argues that the Board's imposition of the burden of proof upon it was error, because, at a pre-assessment hearing, claimant would have had the burden of establishing his eligibility for benefits. Appellant is correct that a claimant has the initial burden of establishing the claim. *Stoodley* v. *Department of Employment Security*, 141 Vt. 457, 459, 449 A.2d 980, 981 (1982). Claimant also carries the burden on such issues as establishing ability to work and availability for suitable employment, *id.*, or that work offered was unsuitable, or that a refusal to accept an offer of employment was for good cause. *Gutches* v. *Department of Employment Security*, 141 Vt. 587, 590, 450 A.2d 1146, 1147 (1982). Appellant, as employer, would have the burden of proof if it attempted to raise, for example, the issue of disqualifying misconduct. *Porter* v. *Department of Employment Security*, 139 Vt. 405, 410, 430 A.2d 450, 453 (1981).

We hold that, on these facts, the Board's requirements for the hearing on remand were unreasonable. A year after the events in question, at a hearing at which claimants were not present, it was significantly more difficult for appellant to challenge the claims or the assessments of benefits against it than at a hearing conducted at the time the applications for benefits were filed. Since the

---

[6] DET concedes that under Vermont Employment Security Board Rule 5(J) contributing employers would have been "interested parties" and would have received notice of the hearings on the basis of which they would have been given an opportunity to challenge the claims of Anyzeski and Ploof. But, at the time of the hearings, Rule 5(J) did not include reimbursable employers like appellant. At oral argument, counsel for DET indicated that Rule 5(J) has been amended to include reimbursable employers. Vermont Employment Security Board Rule 5(J) (effective October 4, 1985). The due process issue of the instant case should thus not arise again.

rights of appellant to an adequate opportunity to respond to a claim under the unemployment compensation statute are grounded in the due process clause of the United States Constitution, the nature and terms of a hearing must be calculated to maintain the essential fairness of the procedure in question, see *Call* v. *Department of Employment Security*, 138 Vt. 52, 55, 411 A.2d 1336, 1338 (1980) (citing *Kaufman* v. *Department of Employment Security*, 136 Vt. 72, 74, 385 A.2d 1080, 1082 (1978)), coming as close as is practicable to replicating what the parties' respective positions in a pre-assessment hearing might have been.

On remand, therefore, DET must bear the burden of proof to demonstrate that the benefits awarded claimants were properly awarded and that the outcome of the case would not have been altered had appellant been granted the opportunity to participate initially. In the present case, DET could have given appellant the same kind of pre-assessment notice that it provides to contributing employers under Rule 5(J). It did not do so and can take no benefit from the fact that its own rules only required notice to contributing employers.

*Reversed and remanded.*

## On Motion for Reargument

**Gibson, J.** In response to DET's motion for reargument, we have made certain clarifying revisions to the opinion that do not affect the end result.

*Motion for reargument denied.*