2005 VT 42

# Steven Holton v. Department of Employment and Training (Town of Vernon, Appellant)

[878 A.2d 1051]

No. 03-535

Present: Dooley, Johnson, Skoglund and Reiber, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed April 1, 2005

148

*Richard C. Carroll* and *Jonathan D. Secrest* of *Kristensen, Cummings, Phillips & Carroll, P.C.*, Brattleboro, for Defendant-Appellant.

*William H. Sorrell*, Attorney General, and *Bridget C. Asay*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

¶ 1. **Johnson, J.** Employer, Town of Vernon, appeals from the Employment Security Board's decision to award unemployment benefits to a former town employee that the town claims was ineligible to receive benefits. The Department of Employment and Training (Department) has already paid all the disputed benefits to the former employee pursuant to the Board's decision and related state and federal law requiring prompt payment of benefits to a claimant after the first adversarial administrative determination that the claimant is eligible. The Department therefore moves to dismiss the appeal as moot because, as a result of Vernon's special self-selected status as a noncontributing employer under the unemployment statute, Vernon must reimburse the Department for all benefits paid to former town employees, including, but not limited to, those benefits "paid but denied on appeal" and "benefits paid in error." 21 V.S.A. § 1321(f). Thus, the Department asserts that Vernon no longer has a legally cognizable stake in the outcome of the case because it will have to pay the Department regardless of whether it wins or loses on appeal. Vernon concedes that the appeal is moot; however, it claims that the

appeal fits within the exception to the mootness doctrine for cases that are capable of repetition yet evade review, and also raises a number of statutory and constitutional objections to the Department's decision to pay the disputed benefits prior to Vernon's appeal to this Court. We reject Vernon's arguments and dismiss the appeal as moot.

¶ 2. Vernon's former employee, Steven Holton, filed for unemployment compensation benefits on May 17, 2003. In June 2003, the claims adjudicator determined that Holton voluntarily ended his employment as a Vernon police officer without good cause attributable to the town. As a result, Holton was disqualified for benefits. See 21 V.S.A. § 1344(a)(2)(A) (disqualifying employee for benefits upon finding that employee left last employing unit voluntarily without good cause attributable to employer).

¶ 3. In July, Holton appealed to the chief appeals referee. The referee held a telephone hearing on the claim, taking testimony from Holton, his former supervisor, and the chairperson of the Vernon selectboard. A couple of weeks after the hearing, the referee sustained the claims adjudicator's decision. Six days later, claimant appealed that decision to the Employment Security Board.

¶ 4. Vernon chose not to participate in the Board's hearing. Pursuant to its rules, the Board took no new evidence, but did hear argument from Holton. The Board reversed the appeals referee's decision, and decreed that Holton's "[c]laims are allowed for and subsequent to the week ending May 17, 2003." The notice of entry that accompanied the Board's decision stated that it "would become final unless an interested party appeals the Decision to the Vermont Supreme Court by filing a Notice of Appeal ... within 30 days of the date of entry of the Board's decision."

¶ 5. The Department began paying the disputed funds to Holton soon after the Board's October 21, 2003 decision. The Department made the payments over a six-week period from October 25, 2003 through November 29, 2003. Vernon timely filed its notice of appeal on November 18, 2003, shortly before the Department made the last payments to Holton. The Department argues, and Vernon concedes, that Vernon's appeal became moot as soon as the last payment was made to Holton.

¶ 6. Though Vernon concedes that its case is now moot, Vernon claims that its case fits within the exception to the mootness doctrine for cases that are capable of repetition yet evade review. Vernon further asserts that the Department acted improperly and without statutory authority when it disbursed benefits to Holton during the

pendency of Vernon's appeal, thereby precluding appellate review of the Board's decision. Vernon also presents an alternative claim that assumes the unemployment statutes do authorize the Department's benefits payout, but argues that the effect of such a statutory scheme in rendering Vernon's appeal moot results in a deprivation of its constitutional rights to due process and equal protection of the law. A review of the federal-state cooperative unemployment insurance system will illustrate how Vernon's claim became moot, and why none of its statutory or constitutional claims entitle it to relief.

## I.

¶ 7. The Legislature enacted Vermont's unemployment statutes in correlation with the federal social security and unemployment tax acts. 21 V.S.A. § 1384. Vermont's unemployment compensation program is, therefore, part of the federal-state cooperative unemployment insurance program that is funded in part by grants to Vermont from the United States. See 42 U.S.C. § 1101(c)(1)(A) (providing for payments to states for assistance in administering their unemployment compensation programs). To qualify for this federal aid, Vermont must receive annual certification from the U.S. Secretary of Labor indicating that, among other things, Vermont's methods of administering its unemployment program are "reasonably calculated to insure full payment of unemployment compensation when due." 42 U.S.C. § 503(a)(1).

¶ 8. The U.S. Supreme Court has interpreted the "when due" language of § 503 to mean "the time when payments are first administratively allowed as a result of a hearing of which both parties have notice and are permitted to present their respective positions." *Cal. Dep't of Human Res. Dev. v. Java*, 402 U.S. 121, 133 (1971); accord *Fusari v. Steinberg*, 419 U.S. 379, 387-88 (1975) ("The basic thrust of the statutory 'when due' requirement is timeliness."(footnote omitted)). In so holding, the Court struck down a California procedure that suspended payments during the pendency of an employer's appeal. *Java*, 402 U.S. at 133.[1] The U.S. Court of Appeals for the Third Circuit interpreted the "when due" statutory language in light of *Java* and *Fusari*, and concluded that "[t]he critical factor is *timely* payment to

---

[1] The California program that the U.S. Supreme Court struck down in *Java* suspended payments for a median period of seven weeks pending an employer's appeal after an initial determination. 402 U.S. at 133. Here, the appeal took substantially longer than seven weeks. The Board issued its decision granting benefits on October 21, 2003. The appeal from this decision was not heard until October 2004, almost one year later.

*all* eligible persons, whether their eligibility is upheld initially or only after one or more appeals." *Wilkinson v. Abrams*, 627 F.2d 650, 661 n.14 (3d Cir. 1980). (Emphasis in original.)

¶ 9. The Department points out that Vermont law is entirely consistent with federal law on this point. Vermont's statute provides that an authorized representative of the Commissioner of Labor shall (1) "pass upon each claim for benefits as provided in this chapter" and (2) "promptly award such benefits as shall be found to be payable under the provisions of this chapter." 21 V.S.A. § 1348(a). The "provisions" of Title 21, chapter 17 include appeals to the referee and the Board. *Id.* §§ 1348(a), 1349. Accordingly, the statutory requirement that the Department promptly award benefits applies equally to benefits found payable at all levels of the administrative process.

¶ 10. The grants provided by the federal government make up only a part of the overall unemployment compensation fund from which the Department draws to pay benefits to qualified workers who become unemployed. The remainder of the money used to pay unemployment benefits comes from public and private employers in the state.

¶ 11. Municipalities like Vernon are provided with two options for meeting their obligations under Vermont's unemployment compensation law. The first option is to be treated as a contributing employer. See *id.* § 1321(e) (outlining computation of employer's experience rating). Contributing employers are required to pay regular contributions to the unemployment compensation fund administered by the Department. *Id.* § 1321(a). These contributions, also commonly referred to as unemployment taxes, are calculated using a complex formula based on the amount of wages the employer pays out and the employer's experience rating record of claims against the employer by former employees. *Id.* §§ 1324, 1325(a). Claims awarded to former employees of a contributing employer are paid directly by the fund with no further reimbursement from the employer, although the claim is counted against the employer for purposes of its experience rating record. 21 V.S.A. § 1325.

¶ 12. The second option, open only to governmental employers and nonprofit corporations, is to be a noncontributing employer. *Id.* § 1321(e). These employers do not pay regular unemployment taxes into the fund, but the fund pays for claims by their former employees. *Id.* Accordingly, noncontributing employers must reimburse the fund for every dollar in benefits paid to their former employees. *Id.*

¶ 13. Municipalities that elect to be noncontributing employers enjoy an advantage over contributing employers because, unlike contrib-

uting employers who must pay the fund even during periods when none of their former employees make claims against them, noncontributing employers pay only when the fund pays benefits to one of their former employees. This self-selected status is not, however, without some drawbacks because the statute requires noncontributing employers to reimburse the fund for "such amounts as the commissioner finds to be due under this chapter, *including but not limited to benefits paid but denied on appeal or benefits paid in error.*" *Id.* § 1321(f) (emphasis added).

## II.

¶ 14. The requirement that the Department promptly pay Holton after the Board's decision, in conjunction with the statutory reimbursement provision in § 1321(f), and the unpredictable time lapse between the beginning of the relatively short payout period and the hearing on appeal caused this case to become moot. A case becomes moot when the parties cease to maintain a legally cognizable interest in the outcome of the case. *State v. Fernald*, 168 Vt. 620, 621, 723 A.2d 1145, 1146 (1998) (mem.). The mootness doctrine derives its force from the Vermont Constitution, which, like its federal counterpart, limits the authority of the courts to the determination of actual, live controversies between adverse litigants. See *In re Opinion of the Justices*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) (holding that the Vermont Constitution grants jurisdiction over only actual controversies). Therefore, mootness generally precludes appellate review. *State v. Gundlah*, 160 Vt. 193, 196, 624 A.2d 368, 370 (1993). When mootness is raised, we must inquire "'whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties.'" *All Cycle, Inc. v. Chittenden Solid Waste Dist.*, 164 Vt. 428, 432, 670 A.2d 800, 803 (1995) (quoting 13A C. Wright, et al., Federal Practice & Procedure § 3533, at 212 (1984)).

¶ 15. At this stage, we fail to see what impact a decision of Vernon's appeal would have on the parties. By disbursing all the funds awarded to Holton, the Department has deprived Vernon of any financial stake in the outcome of this case because, even if Vernon were to prevail in this Court, the Department would exercise its authority under § 1321(f) to collect reimbursement from Vernon for all the benefits "paid but denied on appeal" to Holton. Moreover, Vernon need not fear further liability as a result of the Board's decision because § 1353 prohibits the collateral use of "[a]ny determination, redetermination, finding of fact, conclusion of law, decision, final order, or final judg-

ment entered or made by . . . the employment security board" in any "separate or subsequent action." Accordingly, Vernon's appeal is moot for lack of any stake in its outcome.

¶ 16. Though Vernon recognizes that its appeal is technically moot, it suggests that it fits within the exception to the mootness doctrine for cases that are capable of repetition yet evade review. When the case is not a class action, this exception is limited to situations where: (1) the duration of the challenged action was so brief that it could not be fully litigated before it expired, and (2) there is a reasonable expectation or a demonstrated probability that the appellant will be subject to the same action again. *Fernald*, 168 Vt. at 621, 723 A.2d at 1146. We have held that the second prong of this test requires a showing of reasonable likelihood that the fact pattern presented will be repeated. *Id.*; *Gundlah*, 160 Vt. at 196, 624 A.2d at 370. For example, in *In re P.S.*, 167 Vt. 63, 68, 702 A.2d 98, 101 (1997), we declined to apply this exception to an appeal from a moot order of nonhospitalization revocation because the findings on which the order was based were specific to the facts existing at an earlier time, and any future revocations would be based on new fact patterns. Recently, in *Wild v. Brooks*, we rejected the plaintiff's claim that his nuisance suit against a temporarily shut-down shooting range was capable of repetition yet evading review. 2004 VT 74, ¶ 13, 177 Vt. 171, 862 A.2d 225. We reasoned that the plaintiff would not be subject to the "same" action when the shooting range resumed operations because it was required to do so under new operating conditions that were sufficiently different from the old ones; thus, any opinion based on the superseded conditions would be advisory. *Id.* ¶¶ 12-14.

¶ 17. The Board decision that Vernon now appeals is based on a specific set of facts that are not reasonably likely to recur. The Board's decision turned on the question of whether certain threatening statements made by Vernon's police chief to Holton warranted Holton's resignation. These statements were made in the context of a long-simmering and public dispute between claimant and the police chief.[2] Vernon notes that it employs a relatively large workforce —

___

[2] From the record, this matter appears to have personal undertones for both claimant and Vernon officials. At oral argument, Vernon's counsel stated that, notwithstanding its lack of any financial stake, the Town still seeks vindication for its specific personnel decisions and the conduct of its officials in this matter. Though its desire is understandable, it is not a legally cognizable stake in the outcome of this case. If, however, the

ninety employees in 2003 — and thus reasonably expects that it will "again have cause to challenge the unemployment compensation claim of an employee." While no doubt true, this general statement does not show how any future claim by a different employee will likely present a repetition of the fact pattern underlying the present claim. Accordingly, Vernon has not met its burden of establishing that its case fits within a recognized exception to the mootness doctrine; we cannot, therefore, review its appeal on the merits.

## III.

¶ 18. In response to the State's motion to dismiss on mootness grounds, Vernon raises several statutory and constitutional objections to the Department's benefits-payment policy that resulted in the mootness problem here. The Department contends that we should treat these arguments as waived because Vernon did not raise these arguments prior to appeal, and even then, omitted them in its principal brief. See, e.g., *In re White*, 172 Vt. 335, 343, 779 A.2d 1264, 1270 (2001) (reaffirming rule that Court will not address arguments not properly preserved for appeal); *Bigelow v. Dep't of Taxes*, 163 Vt. 33, 37-38, 652 A.2d 985, 988 (1994) (treating issue not raised in principal brief as waived). The Department's waiver argument ignores the fact that Vernon's statutory and constitutional claims became germane to this appeal only after the Board rendered its decision and the Department began payments. Both the claims adjudicator and the appeals referee had vindicated Vernon's position by denying Holton's claim. The issues before the Board related solely to the correctness of these prior decisions, not to the broader questions of whether the unemployment compensation statute justifies the Department's benefits payout practices, and if so, whether the statutes violate Vernon's constitutional rights. The Department has not even shown that such questions fall within the Board's jurisdiction. See 21 V.S.A. § 1349 (describing the Board's appellate jurisdiction). The appeal did not become moot until the Department made the last benefits payment to Holton eleven days after Vernon filed its notice of appeal to this Court. The Department first called mootness to the Court's attention on January 26, 2000 — four days after Vernon filed its principal brief. Under these circum-

---

Board's decision turned on the validity of a Vernon personnel policy of general application to all of Vernon's employees, it is possible that Vernon's appeal could proceed because a precedent-setting decision from this Court on the policy's viability could affect its financial stake in future cases likely to arise under the policy. This is not such a case.

stances, we conclude that Vernon's statutory and constitutional challenges to the Department's procedure were appropriately made for the first time in response to the Department's motion to dismiss on mootness grounds, and we will address them accordingly.

## A.

¶ 19. Vernon claims that the Department exceeded its authority under the unemployment compensation statute when it disbursed the funds to Holton. The Department acknowledges that disbursement of unemployment compensation funds can be made only within the limits imposed by the statute, *In re Platt*, 130 Vt. 329, 331, 292 A.2d 822, 824 (1972), but maintains that the controlling state and federal statutes fully support its action. We conclude that the Department acted within its authority when it made the disbursement to Holton.

■ ¶ 20. After considering the statutory language discussed *supra*, part I, we find no support for Vernon's assertion that the prompt awarding requirement in § 1348 is limited to initial benefit determinations, and does not apply to benefit awards found payable by the referee or the Board. As we noted, the plain language applies to benefits found payable at all levels of the administrative process, including those benefits first awarded by the Board on appeal. This reading of the statute is also consistent with the federal requirement that benefits be paid at "the time when payments are first administratively allowed as a result of a hearing of which both parties have notice and are permitted to present their respective positions." *Java*, 402 U.S. at 133. Though Vernon chose not to participate, the Board's decision satisfies the *Java* criteria.

■ ¶ 21. Vernon nonetheless contends that the language in § 1348 requires only that the Department make a prompt decision on each claim, and not that it actually disburse disputed funds once the claimant receives a favorable decision. The Department points out that § 1348(a)'s requirement that the commissioner's representative "pass upon each claim" is sufficient to accomplish this purpose. Thus, Vernon's construction would render § 1348(a)'s command to promptly award "benefits as shall be found payable" as surplusage. Our rules of statutory construction require us to consider the statute as a whole giving effect to a statute's every word, sentence, and clause, when possible. *Woolaver v. State*, 2003 VT 71, ¶ 21, 175 Vt. 397, 833 A.2d 849. Moreover, we have repeatedly recognized that the unemployment statutes must be construed liberally in favor of claimants so as to best

effectuate their purpose of removing the economic disabilities and distress resulting from involuntary unemployment. E.g., *Howard v. Dep't of Employment & Training*, 153 Vt. 614, 616, 572 A.2d 931, 932 (1990). Finally, we are hesitant to give the statute a construction that may conflict with the requirements of federal law cited above, thereby jeopardizing Vermont's eligibility for federal contributions in the operation of its unemployment compensation program. This consideration is strengthened by the express statutory references to the correlation between the federal law and Vermont's law. 21 V.S.A. § 1384. Accordingly, we must reject Vernon's construction, and conclude that the Department was both authorized and required to disburse the funds to Holton after the Board found them payable.

¶ 22. Section 1321(f) further supports our interpretation. As noted, this provision makes noncontributing employers like Vernon liable to the Department for "benefits paid but denied on appeal." 21 V.S.A. § 1321(f). By enacting this provision, the Legislature expressly contemplated that benefits would be paid pending appellate review, and that benefits paid might later be denied. Though the Legislature may not have envisioned the effect that such disbursements could have in mooting cases like this one where all the benefits due are paid prior to the appeal, the statute still contains the authority to make the disbursement.[3]

¶ 23. Vernon argues that § 1321(f) conflicts with the right of appeal to the Supreme Court contained in § 1349, which provides that the decision of the Board "shall be final unless an appeal to the supreme court is taken." The Department counters by correctly pointing out that any litigant's appeal can become moot because of "intervening factors or the passage of time." Furthermore, § 1349 applies generally to all parties, including employees, contributing employers, and noncontributing employers. Of these three, only noncontributing employers will face potential mootness problems. When a claimant appeals a denial to this Court, the claimant will ordinarily retain a

---

[3] Vernon argues that through an amendment to § 1321(f), the Legislature could solve the mootness problem that will arise in some cases involving appeals by noncontributing employers. It argues that the Legislature could omit the language that creates noncontributing employer liability for benefits paid but denied on appeal, thus preserving the noncontributing employer's financial stake in the outcome of the appeal. In the absence of any constitutional infirmity in the statute, see *infra*, parts II.B, II.C, we must leave the policy considerations that such an amendment would entail for the Legislature to resolve.

stake in the outcome because the claimant will be entitled to compensation if the claimant's appeal succeeds. A contributing employer also retains a stake in an appeal challenging a Board decision that grants benefits to one of its former employees because the employer's future rate of contribution will be affected by any claim that is charged to its experience-rating record. See 21 V.S.A. § 1325 (explaining how a contributing employer's experience rating record is calculated). Thus, a contributing employer has a financial incentive to ensure that its record is not affected by claims from employees who should have been disqualified from receiving benefits. While this system puts some noncontributing employers wishing to appeal from the Board at a comparative disadvantage to contributing employers, it must be remembered that Vernon had, and still has, the opportunity to choose its status within this system, and that its choice comes with the relative advantage of not having to make regular unemployment tax payments. *Supra* ¶¶ 6-7.

## B.

¶ 24. In light of our conclusion that the unemployment statutes authorized the Department's disbursement to Holton following the Board's decision in his favor, we now address Vernon's claim that this result deprives it of due process. Vernon cites *City of Burlington v. Department of Employment & Training* for the proposition that noncontributing employers have the same Fourteenth Amendment due process rights in the granting or denying of unemployment benefits as do employees. 148 Vt. 151, 158, 530 A.2d 573, 577 (1987). In that case, we affirmed the Board's decision that the noncontributing employers' due process rights were violated when they were not given notice and an opportunity to be heard at the hearings where their liability for unemployment benefits was first determined. *Id.* at 157-58, 530 A.2d at 577. We further held that the remedy the Board fashioned for this violation also failed to satisfy the requirements of due process because, in ordering a new hearing, the Board improperly placed the burden of proof on the employer. *Id.* at 158-59, 530 A.2d at 578. We also faulted the Board's procedure on remand because the new hearing would occur a year after the events relating to the claims took place, and would therefore place the employer in a "significantly more difficult" position to challenge the claims than it would have been at a hearing conducted at the time when the claims were first filed. *Id.*

¶ 25. But Vernon concedes that, unlike the employers in *City of Burlington,* it was given notice and an opportunity to participate in the

administrative process before a neutral decisionmaker. In fact, Vernon participated in the evidentiary hearing conducted by the appeals referee, but *chose not to participate* in the hearing before the Board where its liability was ultimately determined. An employer who has received two opportunities to participate in administrative proceedings prior to the determination of its liability has received all the process it was due under the federal constitution, and nothing in *City of Burlington* is to the contrary.

¶ 26. In making its due process argument, Vernon has not claimed that the administrative procedures used to determine its liability were somehow deficient in terms of their procedural fairness. This is an element of its burden in showing a procedural due process violation of the U.S. Constitution. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (evaluating fairness of administrative procedure for due process purposes based on the risk that procedures used will result in an erroneous deprivation of liberty or property, and the probable value, if any, that additional or substitute procedures would add). Vernon has not alleged that the rules and procedures in the administrative process deprived it of the ability to submit evidence and legal arguments necessary to refute Holton's claims. Nor has it claimed that the administrative officers who handled the case lacked necessary qualifications to understand the central issue involved. In fact, we have often noted that the Board has "special expertise" in determining whether an employee's resignation is for good cause attributable to the employer, and we afford its decision on this issue great weight on appeal. *Garcia v. Dep't of Employment & Training*, 145 Vt. 331, 334-35, 488 A.2d 762, 764 (1985).

¶ 27. Vernon also claims that the effect of the statutory scheme in depriving it of an appeal to this Court in this case violates Chapter I, Article 4 of the Vermont Constitution. The Vermont Constitution mandates that "[e]very person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which one may receive in person, property or character ...." Vt. Const. ch. I, art. 4. We have treated Article 4 as the Vermont equivalent of the federal constitution's Due Process Clause, *Quesnel v. Town of Middlebury*, 167 Vt. 252, 258, 706 A.2d 436, 439 (1997), and we have interpreted Article 4 as requiring adequate access to judicial process. E.g., *Shields v. Gerhart*, 163 Vt. 219, 223, 658 A.2d 924, 928 (1995). As discussed, the effect of the statutory scheme on this case has not resulted in a violation of the federal constitution's Due Process Clause

even though Vernon will not have access to an appellate law court in this case. Thus, a similar result should obtain under Article 4.

¶ 28. We have, however, stated in dicta that, in light of Article 4, we would hesitate to interpret an "arguably ambiguous" statute as foreclosing judicial review of administrative agency action. *Vincent v. Vt. State Ret. Bd.*, 148 Vt. 531, 534 n.2, 536 A.2d 925, 927 n.2 (1987). We are not presented with such a problem here because this statute is unambiguous. It does not foreclose judicial review in all cases involving noncontributing employers. To the contrary, it expressly provides all interested parties the right to appeal the Board's decision to this Court. 21 V.S.A. § 1349. The reimbursement provision of § 1321(f), in conjunction with the relatively short disbursement period for this claim, rendered this particular noncontributing employer's appeal moot. While appeals by other similarly situated noncontributing employers may suffer the same fate, the statute does not by its terms foreclose noncontributing employer appeals from judicial review of agency action.

## C.

¶ 29. Vernon next argues that § 1321(f)'s requirement that noncontributing employers reimburse the Department for any benefits "paid but denied on appeal" violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. "Absent a suspect classification or a violation of a fundamental right, a legislative classification does not deny equal protection of the laws if it is rationally related to a legitimate public purpose." *In re Letourneau*, 168 Vt. 539, 553, 726 A.2d 31, 41 (1998). Vernon concedes that its self-selected status under the unemployment statutes is not a suspect classification, and that no fundamental rights are involved here. Thus, applying the rational basis standard, we have no problem in discerning a legitimate governmental interest that supports the disparate treatment between contributing and noncontributing employers.

¶ 30. As we noted above, noncontributing employers do not pay the unemployment taxes from which the fund receives the money that covers all benefits paid to claimants regardless of whether the claimants were employed by a contributing or noncontributing employer. By requiring a noncontributing employer to reimburse the fund for all benefits paid out to its former employees, the state ensures the financial integrity and liquidity of the fund. In a sense, there is little disparity between contributing and noncontributing employers because all the unemployment taxes that contributing employers pay into

the fund are forever lost to those employers, although their future rate of contribution will be affected by only those claims that are upheld on appeal. Nothing in this system offends the Equal Protection Clause.[4]

*Dismissed.*

---

[4] Without citation to authority, Vernon further contends that we should still strike down § 1321(f) on equal protection grounds in spite of our conclusion that it is rationally related to a legitimate governmental interest. To the extent we understand it, Vernon's argument is that the Legislature failed to consider the effect that the reimbursement provision would have on the appeal rights of noncontributing employers, and thus it should be invalidated as arbitrary and capricious. This argument is without merit.