NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 4

No. 2019-094

| | |
|---|---|
| Chittenden County Sheriff's Department | Supreme Court |
| | |
| | On Appeal from |
| v. | Employment Security Board |
| | |
| Department of Labor | October Term, 2019 |

Michael Harrington, Chair

Norman R. Blais, Burlington, for Plaintiff-Appellant.

Dirk Anderson, Montpelier, Defendant-Appellee.

PRESENT:  Reiber, C.J., Robinson and Eaton, JJ., and Burgess, J. (Ret.)[1] and
          Morris, Supr. J. (Ret.), Specially Assigned

¶ 1.  **EATON, J.**  The Chittenden County Sheriff's Department (CCSD) appeals from the Vermont Employment Security Board's ruling that the CCSD is not entitled to relief from several weeks of unemployment compensation benefits which it paid to a former CCSD employee, Michael Major, due to an alleged erroneous determination by a Board claims adjudicator.  We affirm.

¶ 2.  The procedural and factual background is as follows.  Michael Major had been employed by the CCSD as a deputy sheriff since 1985.  Starting in 1995, Major worked, under the direction of the Sheriff, transporting prisoners and others in State custody pursuant to a State contract.  He was paid by the State for his work as a transport deputy.  During this period, he also

---

[1] Justice Burgess was present for oral argument but has since recused himself.

did other law enforcement work for the CCSD, which paid him for that work. At some point, Major was promoted to the rank of captain.

¶ 3.    The Chittenden County Sheriff is an elected position that Kevin McLaughlin has held since 1987. In 2018, Major challenged McLaughlin in the primary election. Once Major announced his primary challenge, McLaughlin temporarily demoted him in rank based on conflict-of-interest concerns. After losing the primary, Major had reservations about being able to have a good working relationship with McLaughlin and was afraid he would be fired. Major offered to resign from the CCSD if McLaughlin would first restore him to his prior rank of captain. McLaughlin agreed, restored Major to captain, and Major resigned on August 21, 2018.

¶ 4.    Eight days later, Major sought unemployment benefits. Both the State and the CCSD were notified of the claim and responded in writing by informing the Department of Labor that Major had voluntarily quit. In fact, the CCSD's response clearly indicated, in at least two places, that Major had voluntarily quit his employment. Thereafter, the claims adjudicator conducted fact-finding interviews with Major and a representative of the State. The State representative reiterated that Major had voluntarily quit. For reasons which are unclear, the claims adjudicator did not speak with the CCSD as part of the fact-finding process.[2] Despite the information from both the CCSD and the State that Major had voluntarily quit his employment, the claims adjudicator allowed the claim for unemployment benefits beginning on September 1, 2018, finding that Major had been discharged from his last employment for reasons other than misconduct.

¶ 5.    The CCSD and the State both appealed the claims adjudicator's decision to an Administrative Law Judge (ALJ), who, following a hearing, reversed the claims adjudicator's determination and found that Major had voluntarily quit and was therefore not entitled to unemployment benefits. As part of that determination, the ALJ waived any requirement that Major

---

[2] The record is also "unclear as to whether the adjudicator attempted to contact the Sheriff."

2

repay the benefits he had received because the ordered payments were not a result of any nondisclosure or material misrepresentation on his part. The ALJ also refused to allow the CCSD or the State relief from benefits already paid to Major as a result of the claims adjudicator's determination. Although the ALJ concluded the State was Major's last employing unit, the ALJ further determined that neither Major nor McLaughlin made any distinction between Major's employment by the State or the CCSD and that, in practice, Major's position as a State transport deputy and his duties from the CCSD were one and the same.

¶ 6. The ALJ refused to allow the CCSD and the State to be relieved of benefits they had paid to Major because both employers had chosen not to pay quarterly unemployment insurance tax, but instead elected to make reimbursement payments to the unemployment compensation fund for benefits they were ordered to pay. As a result of being a reimbursing employer, rather than a contributing one, the CCSD was liable to reimburse the unemployment fund, and could not be relieved of those charges. The CCSD appealed this decision to the Employment Security Board. Neither Major nor the State appealed.

¶ 7. Before the Board, the CCSD challenged the failure of the claims adjudicator to speak with a CCSD representative before ordering benefits to be paid and further argued that it should be entitled to recover benefits it had paid because the claims adjudicator was found to have ordered payments in error. Following a hearing at which no new evidence was taken, the Board adopted the findings and conclusions of the ALJ and affirmed the ALJ decision in all respects. This appeal followed.

¶ 8. The CCSD argues that the Board violated the CCSD's due process and equal protection rights by assessing what it characterizes as a "penalty" against it without reference to any standards or principles, and thus issued a ruling that was arbitrary and capricious. It further argues that the assessment of a penalty against it stemming from the determination of the claims adjudicator at which CCSD did not participate violates both the Vermont Administrative

3

Procedures Act and the Due Process Clause.  Finally, it alleges the Board's finding that Major was employed by the State was clearly erroneous, and if it was not, then an assessment against the CCSD is not supportable.[3]

¶ 9.    "When reviewing decisions of the Employment Security Board, we generally defer to its interpretations of the statutes it is charged with administering."  Windham Cnty. Sheriff's Dep't v. Dep't of Labor, 2013 VT 88, ¶ 6, 195 Vt. 1, 86 A.3d 410 (quotation omitted).  However, application of this deferential standard of review is appropriate only where the decision at issue falls within the scope of the Board's expertise.  See, e.g., id. (reviewing Board decision de novo where questions presented on appeal were of "statutory construction and retroactivity of provisions not involving any facts or employment-specific knowledge").  Because the operative questions in this appeal do not involve the Board's factual findings, see supra note 3, or employment-specific knowledge, but instead implicate questions of statutory construction and constitutional rights, our review is de novo.  Windham Cnty. Sheriff's Dep't, 2013 VT 88, ¶ 6.

¶ 10.    As the parties point out, the statutory framework at issue in this case is straightforward.    The State maintains an unemployment compensation fund "to which all contributions required and from which all benefits provided under [Vermont's unemployment compensation statute] shall be paid."  21 V.S.A. § 1301(8).  By default, employers are required to make regular contributions to the fund, commonly referred to as unemployment taxes; these taxes "are calculated using a complex formula based on the amount of wages the employer pays out and the employer's experience rating record of claims against the employer by former employees."  Holton v. Dep't of Emp't & Training, 2005 VT 42, ¶ 11, 178 Vt. 147, 878 A.2d 1051 (citing 21

---

[3]  The CCSD concedes that it was Major's employer for purposes of this appeal, and that the effect of a finding that Major was not employed by the State would have been that the State had no liability—rather than partial liability—for unemployment benefits payments to Major had he not voluntarily quit.  The State has made no claim that the CCSD should have paid all the benefits which were allowed by the claim's adjudicator.  Therefore, further consideration of the employment relationship between Major and the CCSD or the State is not necessary for resolution of this appeal.

V.S.A. §§ 1321(a), 1324, 1325(a)). An employer required to make the unemployment tax payments is considered a contributing employer. Id. "Claims awarded to former employees of a contributing employer are paid directly by the fund with no further reimbursement from the employer, although the claim is counted against the employer for purposes of its experience rating record." Id. (citing 21 V.S.A. § 1325).

¶ 11. However, municipalities, State institutions of higher education, and political or governmental subdivisions or instrumentalities of the State may elect to forgo unemployment tax payments in favor of an arrangement whereby claims awarded to their former employees are paid directly by the fund, following which the employer must reimburse the fund for the amount of the payment. 21 V.S.A. § 1321(e), (f). Unlike contributing employers, employers who make payments in lieu of tax contributions under the auspices of this provision are

> considered to be self-insuring and shall pay to the Commissioner for the . . . [f]und such amounts as the Commissioner finds to be due under this chapter, including benefits paid but denied on appeal or benefits paid in error which cannot be properly charged either against another employer who makes payments in lieu of contributions or against the experience-rating record of another employer who pays contributions.

Id. § 1321(f); see also Holton, 2005 VT 42, ¶ 12 (explaining that because reimbursing employers "do not pay regular unemployment taxes into the fund, but the fund pays for claims by their former employees[,] . . . . noncontributing employers must reimburse the fund for every dollar in benefits paid to their former employees"). The CCSD has opted out of contributing status, choosing to reimburse the fund for amounts found due to its former employees instead of paying unemployment taxes. It is therefore a reimbursing employer.

¶ 12. Where, as here, unemployment benefit payments are disputed, the Board "may hear and decide all matters appealed to it." 21 V.S.A. § 1302(b). "It shall determine its own methods of procedure," and "may, with the approval of the Governor, adopt, amend, suspend, or rescind such rules and regulations as it considers necessary and consistent with this chapter." Id. As the

5

CCSD notes, the rules and regulations promulgated by the Board do not elaborate on circumstances under which an employer must reimburse the fund for benefits paid but denied on appeal as set forth in § 1321(f). See Rules of the Vermont Employment Security Board, Code of Vt. Rules 24 005 001, https://labor.vermont.gov/sites/labor/files/doc_library/EmploymentSecurityBoardRules _Amended_Effective10.01.19.pdf [https://perma.cc/LC5K-98UL]. On this basis, the CCSD argues that, in affirming the ALJ's determination that the CCSD could not be relieved of the charges denied on appeal without referring to guiding standards and principles, the Board acted in an arbitrary and capricious manner. It further contends that the lack of notice at the claims-adjudicator level violated the Vermont Administrative Procedures Act (VAPA), 3 V.S.A. §§ 800-848.

¶ 13. We turn first to the latter contention, both because it may be briefly addressed and because the two issues are intertwined by virtue of the CCSD's argument that VAPA serves as a procedural "benchmark for fair adjudication of disputed matters before administrative agencies." The CCSD argues that VAPA was violated when the claims adjudicator did not conduct a fact-finding interview with a representative of the CCSD after the CCSD submitted a separation form indicating that Major quit. The CCSD is correct in noting that VAPA requires that, "[i]n a contested case, all parties . . . be given an opportunity for hearing after reasonable notice"; such notice contain a "statement of the time, place, and nature of the hearing"; and "[o]pportunity . . . be given all parties to respond and present evidence and argument on all issues involved." 3 V.S.A. § 809(a), (b)(1), (c). However, VAPA also provides that § 809 does not apply to:

> [a]cts, decisions, findings, or determinations by the Employment Security Board or the Commissioner of Labor or his or her, its, or their duly authorized agents and to any and all procedures or hearings before and by him or her or it or his or her or its agents . . . .

Id. § 816(a)(2). The process afforded the CCSD here did not violate § 809 of VAPA because that provision does not apply to procedures or hearings before agents of the Commissioner of Labor.

6

¶ 14. With the understanding that the cited provisions of VAPA do not, as the CCSD suggests, articulate the Legislature's view of the application of due process requirements here, we address the constitutional questions raised by the CCSD. We perceive the CCSD to assert two distinct constitutional challenges, the first alleging a denial of due process and equal protection resulting from arbitrary and capricious decision making by an administrative body, and the second asserting a denial of procedural due process. We find no merit in either assertion.

¶ 15. The CCSD's first challenge is predicated on the argument that, because neither 21 V.S.A. § 1321(f) nor the DOL Rules provide standards for the Board to apply when determining whether benefits paid but denied on appeal are rightfully assessed against a reimbursing employer, § 1321(f) results in arbitrary and capricious administrative decisions. The CCSD argues that if the Legislature's intention was to convey that the Commissioner's task in assessing such benefits was "merely an exercise involving arithmetic, namely just adding the payments wrongly paid and making an assessment for that calculated amount against the former employer" it would have been "easy . . . to so state." According to the CCSD, it is more likely that the Legislature "intended the Commissioner to engage in an analysis of the facts and circumstances of each case" and make findings as to the "appropriateness" of the employer being liable for the amount paid but denied on appeal. Contending that the statute thus accords authority to the Commissioner to "essentially impose a penalty"[4] upon employers without benefit of legislative guidance or direction, the CCSD

---

[4] Nothing in the language of § 1321(f) supports the CCSD's characterization of a reimbursing employer's liability for benefits paid but denied on appeal as a "penalty." See Penalty, Black's Law Dictionary (11th ed. 2019) (defining "penalty" as "[p]unishment imposed on a wrongdoer . . . esp[ecially] a sum of money exacted as punishment for . . . a wrong . . . (as distinguished from compensation for the injured party's loss)"). Indeed, analysis of the unemployment compensation statutes reveals that, where the Legislature intended to impose a penalty therein, it so stated explicitly. See, e.g., 21 V.S.A. §§ 1314(h), 1325(d)(3), 1328 (providing for penalties by explicitly designating same as "penalty"). Assumption of the risk of erroneous payment is a foreseeable consequence of selecting "self-insuring" status under § 1321(f), and an employer who chooses this status accepts this "drawback" in exchange for the "relative advantage of not having to make regular unemployment tax payments." Holton, 2005 VT 42, ¶¶ 13, 23.

argues that, as a result, the Board's decision not to allow the CCSD's recoupment of benefits paid to Major but denied on appeal was arbitrary and capricious.

¶ 16. It is well established that administrative decisions "arrived at without reference to any standards or principles [are] arbitrary and capricious," and that "such ad[]hoc decision-making denies . . . due process of law." In re MVP Health Ins. Co., 2016 VT 111, ¶ 20, 203 Vt. 274, 155 A.3d 1207 (quoting In re Miserocchi, 170 Vt. 320, 325, 749 A.2d 607, 611 (2000)). "To withstand the charge of unconstitutional delegation of legislative power, the statute must establish reasonable standards to govern the achievement of its purpose and the execution of the power which it confers." Vt. Home Mortg. Credit Agency v. Montpelier Nat'l Bank, 128 Vt. 272, 278, 262 A.2d 445, 449 (1970). However, the CCSD also suggests that the allegedly unlawful delegation resulted in a violation of its rights to due process and equal protection. In support of these arguments, it cites In re Handy, in which we recognized that, in addition to running afoul of separation-of-powers principles, "the power to grant or refuse zoning permits without standards denies applicants equal protection of the laws[,]" and "denies landowners due process of law because it does not give them notice of what land uses are acceptable." 171 Vt. 336, 345-46, 764 A.2d 1226, 1235-36 (2000). But, as the language of In re Handy suggests, it is "[i]n the context of land-use regulation" that "our approach to complaints of standardless, arbitrary discretion focuses on the criteria for due process and equal protection." In re Pierce Subdivision Application, 2008 VT 100, ¶ 19, 184 Vt. 365, 965 A.2d 468.

¶ 17. To the extent the CCSD's argument—although not fully articulated—is therefore properly construed as an invitation to apply the principles set forth in In re Handy here, we need not consider it. This is so because a condition precedent to application of these principles is "a grant of flexibility" from the Legislature. See In re Handy, 171 Vt. at 349, 764 A.2d at 1238. The CCSD's argument ignores the reality that § 1321(f) confers no decision making power upon the Board. We cannot agree with the CCSD's interpretation of § 1321(f) because the plain language

8

of the statute mandates that reimbursing employers compensate the fund for benefits paid but denied on appeal, regardless of the surrounding circumstances. 21 V.S.A. § 1321(f); see also State v. Love, 2017 VT 75, ¶ 9, 205 Vt. 418, 174 A.3d 761 ("We look first to the statutory language's plain meaning and, if this language clearly expresses the legislative intent, we will enforce the statute without relying on statutory construction."). Indeed, we have explained that, "[b]y enacting this provision, the Legislature expressly contemplated that benefits would be paid pending appellate review, and that benefits paid might later be denied." Holton, 2005 VT 42, ¶ 22. The Legislature also expressly contemplated that reimbursing employers, in choosing not to pay unemployment taxes, would assume financial responsibility for benefits paid by the fund but denied on appeal. See id. ¶ 30 (observing that "[b]y requiring a noncontributing employer to reimburse the fund for all benefits paid out to its former employees, the state ensures the financial integrity and liquidity of the fund"); see also 21 V.S.A. § 1321(f) (designating reimbursing employers "self-insuring"). As a result of the CCSD choosing reimbursing status, the Board was bound to find the CCSD responsible for the benefits paid but denied on appeal. Where a statute confers no discretion upon an administering body, there is no need for standards or principles to guide the exercise of such discretion. There is no delegation of legislative power—standardless or otherwise—within § 1321(f). As a result, no violation of separation of powers and no denial of due process or equal protection could have resulted from the same.

¶ 18. However, by analogizing this case to City of Burlington v. Department of Employment and Training, 148 Vt. 151, 530 A.2d 573 (1987), superseded on other grounds by 21 V.S.A. § 1301(23), we understand the CCSD to raise a separate, procedural due process claim. "The Fourteenth Amendment to the United States Constitution prohibits the deprivation of life, liberty, or property without due process of law." In re New Cingular Wireless PCS, LLC, 2012 VT 46, ¶ 13, 192 Vt. 20, 54 A.3d 141. In City of Burlington, we recognized that "the due process requirements of the Fourteenth Amendment apply to the granting or denying of unemployment

9

benefits, and . . . the rights of the employer are protected along with those of the claimant." 148 Vt. at 158, 530 A.2d at 577. Because an employer's right to an adequate opportunity to respond to an unemployment claim is "grounded in the [D]ue [P]rocess [C]lause of the United States Constitution, the nature and terms of a hearing must be calculated to maintain the essential fairness of the procedure in question." Id. at 158-59, 530 A.2d at 578.

¶ 19. "But the range of interests protected by procedural due process is not infinite." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 570 (1972). Here, we understand the CCSD to assert deprivation of property—namely, the benefits paid to Major in the window between the claims adjudicator's decision and the ALJ's reversal of that determination. "Analysis of a claim of deprivation of property without due process of law commences with a determination of whether any right requiring constitutional protection in fact is involved." In re Great Waters of Am., Inc., 140 Vt. 105, 108, 435 A.2d 956, 958 (1981).[5] Such property rights "are not created by the Constitution[;]" rather, they are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colls., 408 U.S. at 577 (holding that constitutionally protected property interests are based not in "abstract need or desire" or "unilateral expectation" but instead founded on "legitimate claim[s] of entitlement"). Thus, to assert a valid claim of deprivation of property without due process, the CCSD must "demonstrate more than a mere expectation; rather, [it] must demonstrate that state law has created a legitimate claim of entitlement to the property interest." Gould v. Town of Monkton, 2016 VT 84, ¶ 19, 202 Vt. 535, 150 A.3d 1084.

¶ 20. We conclude that the CCSD has demonstrated no legitimate claim of entitlement to the amount paid to Major in the period between the claims adjudicator's determination and the

---

[5] As noted in In re New Cingular Wireless PCS, LLC, the "core holding" of Great Waters survives the subsequent repudiation of one aspect of our rationale. 2012 VT 46, ¶ 14 n. 4.

10

ALJ's reversal, and, therefore, no constitutionally protected property interest therein.[6]  The CCSD does not suggest that it has any common-law or contractual entitlement to this sum, and, for the reasons set forth above, neither VAPA nor 21 V.S.A. § 1321(f) provide any support for such entitlement.  See Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 765 (2005) (finding no constitutionally protected property interest where no common-law or contractual entitlement was asserted, and noting that if statutory entitlement existed, "we would expect to see some indication of that in the statute itself").  Instead, § 1321(f) expressly provides that reimbursing employers have no entitlement to amounts paid but denied on appeal.  The CCSD therefore asserts a "unilateral expectation," not a "legitimate claim of entitlement."  Bd. of Regents of State Colls., 408 U.S. at 577.

¶ 21.  Moreover, we cannot agree with the CCSD's suggestion that this case is similar to City of Burlington.  In that case, we held that the procedural due process rights of two reimbursing employers were violated where the employers did not learn that their erstwhile employees had filed benefit claims until the employers were billed for these benefits, having been found liable at hearings of which they had no notice.  City of Burlington, 148 Vt. at 152-53, 158, 530 A.2d at 574, 577.  In contrast, the CCSD was promptly apprised of Major's claim and invited to respond; it did so, clearly stating in writing that Major voluntarily quit and describing the surrounding circumstances.  The CCSD does not allege that, had the claims adjudicator contacted a representative of the CCSD, the information conveyed by that representative would have materially differed from what was set forth in the form which the claims adjudicator received prior to the time the preliminary decision ordering benefits to be paid was made.  Further, City of Burlington concerned whether employers received due process before an appeals referee.  Id. at 152, 530 A.2d at 574 (identifying legal issue as "whether appellant was afforded a fair and

_____

[6]  We note that employers who believe the Department has erred in its initial determination may seek to lessen this amount by requesting an expedited hearing at the next level of review.

11

adequate opportunity to be heard before the appeals referee").  An ALJ is "the appellate hearing officer identified by 21 V.S.A. § 1348 as the appeals referee."  Rules of the Vermont Employment Security Board, Code of Vt. Rules 24 005 001, Rule 2(B).  The CCSD does not dispute that it was provided notice and an opportunity to respond before the ALJ.

¶ 22.   The plain language of 21 V.S.A. § 1321(f) makes abundantly clear to all eligible employers that, should they select reimbursing status, they will assume financial responsibility for benefits paid but denied on appeal.  And as we have recognized, reimbursing employers "enjoy an advantage over contributing employers because, unlike contributing employers who must pay the fund even during periods when none of their former employees make claims against them, noncontributing employers pay only when the fund pays benefits to one of their former employers."  Holton, 2005 VT 42, ¶ 13.  Having availed itself of this advantage, the CCSD cannot now avoid the financial obligations, including the risk of liability for benefits paid in error, it accepted in exchange.

Affirmed.

FOR THE COURT:

_____

Associate Justice