## The Caledonian Record Publishing Co., Inc. v. Department of Employment and Training

[559 A.2d 678]

No. 87-563

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed March 17, 1989

*Kimberly K. Hayden* of *Downs Rachlin & Martin*, St. Johnsbury, for Plaintiff-Appellant.

*Brooke Pearson*, Montpelier, for Defendant-Appellee.

**Gibson, J.** Plaintiff appeals from a decision of the Vermont Employment Security Board (Board), sustaining an assessment for unemployment contributions plus interest by the Department of Employment and Training (Department). We affirm.

Plaintiff is the publisher of a daily newspaper in St. Johnsbury, Vermont. Delivery of newspapers within the town is handled by regular employees, but, to service its out-of-town subscribers and customers, plaintiff entered into contracts with individual motor carriers to transport bundles of newspapers to rural stores and paper carriers. The delivery contracts were awarded through a bidding process conducted by the plaintiff, and, although each contract was based on a yearly agreement, payments were made monthly.

The expenses incurred by the individual motor carriers in servicing their routes, i.e., maintenance, gas, insurance, and the like, were included in the flat-fee contract price. Neither plaintiff nor the carriers ever separated out which portion of the contracts represented payments for expenses incurred.

On January 6, 1986, the Department informed plaintiff that, because this Court's decision in *Times-Argus Association, Inc.* v. *Department of Employment & Training*, 146 Vt. 320, 503 A.2d 129 (1985), payments to newspaper route drivers were considered to be wages and plaintiff was liable for unemployment contributions with respect to such payments.

On March 17, 1987, after the Department conducted an audit of plaintiff's books and records, it assessed plaintiff $1,320.15 in contributions plus interest for the period March 31, 1984, through

September 30, 1985. Plaintiff petitioned for and received a hearing before a referee, who upheld the assessment. Plaintiff then appealed to the Board, which affirmed the referee's decision. At both these hearings, plaintiff argued that if the assessment were upheld, it should be permitted to deduct the expenses incurred in servicing the contracts. This request was denied.

Plaintiff appeals the decision of the Board on three grounds: (1) that the Board erred in presuming that money paid for services constitutes "wages"; (2) that plaintiff's bid contracts were not wages; and (3) that if the payments were wages, the Board should have allowed the employer to deduct that portion of the payments which constituted reimbursement to the carriers for their expenses.

## I.

Plaintiff's first challenge is that the Board erred when it stated that

> the Department is obligated to present evidence demonstrating that remuneration of a certain amount was paid by someone to another in return for services performed by the latter. Once the Department presents this evidence, it has met its burden, whether of production or proof, and it is then up to the employer to show that the payments made by it were something other than "wages."

Plaintiff alleges that this language creates a presumption not anchored in law. We disagree.

Wages are defined in 21 V.S.A. § 1301(12) as consisting of "all remuneration paid for services rendered."*   In order to prove wages, then, the Department had to prove by a preponderance of the evidence that the payments at issue were remuneration for services rendered. The challenged conclusion simply reiterates this standard. Although the Board's choice of words might have been more narrowly tailored to the issue, no presumption was created thereby.

---

* 21 V.S.A. § 1301(12) provides in pertinent part as follows:
    "Wages" means all remuneration paid for services rendered by an individual, including commissions and bonuses and the cash value of all remuneration paid in any medium other than cash.

## II.

■ Our resolution of the first issue leads us directly to plaintiff's second contention: that the bid contracts at issue do not constitute "wages."

This Court addressed the question of what constitutes wages in a remarkably similar situation in the case relied upon by the Department in making the initial assessment against plaintiff. In *Times-Argus Association* v. *Department of Employment & Training*, the newspaper argued that since its route drivers were paid lump sums on a contract basis there were no wages, and in the alternative, that if the payments were wages, then there was no employment. This Court, in addressing the first issue, determined that wages "means *all* remuneration for services rendered. As [the Times-Argus] admits, the drivers receive sums (remuneration) for driving their routes (services). The Board did not err when it found that drivers received 'wages.'" 146 Vt. at 322, 503 A.2d at 130.

Plaintiff attempts to distinguish *Times-Argus* by contrasting the contracts involved in that case from those at issue here. In *Times-Argus,* the motor carrier contracts were based on mileage traveled, hours spent delivering the papers, and the number of subscribers served. *Id.* at 321, 503 A.2d at 129. In the instant case, plaintiff argues that there was a flat-fee arrangement based on the bids submitted by the motor carriers. What proportions of the bids submitted were allocable to cover expenses was not its concern, it contends.

Plaintiff does not deny, however, that at least some portion of the contract prices paid to its carriers was "for services rendered." Instead, relying on the Board's decision in *In re Appeal No. C-01-85-04-11*, (Vt. Employment Sec. Bd. Dec. 13, 1985) (the *Herald* decision), plaintiff claims that not all payments made for services rendered are "wages" for purposes of the Unemployment Compensation Law.

In the *Herald* decision, the Board determined that the employer's flat-fee payments to news stringers and freelance writers, upon acceptance of their articles for publication, did not constitute "wages." Recognizing that the payments were more properly characterized as "payments for a product which the [employer] has decided to purchase," the Board stated that they were "insuf-

ficiently related to any services rendered by [the writers] to satisfy the statutory definition of 'wages.' " *Id.*, slip op. at 7,

The Board's decision in *Herald* does not compel a conclusion that the payments made by plaintiff in the instant case are likewise not wages. Plaintiff advances a "risk of loss" analysis which, it claims, is the same analysis used by the Board in *Herald* to distinguish the fees paid to freelancers from other payments constituting "wages." We are not persuaded that this analysis is appropriate. Rather, the thrust of *Herald* was that the Board would henceforth examine how closely payments made relate to services rendered before finding the existence of "wages."

Plaintiff claims that the Department arbitrarily relied on this Court's *Times-Argus* decision in deciding that the payments made to its carriers were "wages." Plaintiff appears to argue that the Department has some kind of duty to investigate each driver's actions in order to ascertain whether they constituted "services rendered" to the employer. We disagree.

The Department assigned field officers to audit all payments upon which assessments were later imposed. It was only after these audits were conducted that the decision was made to demand contributions for the unpaid amounts. In addition, the record shows that at no time did plaintiff present any evidence to show that the drivers' distribution of its newspapers was anything other than a service rendered to it. The Department's only burden was to show "remuneration paid for services rendered," which it did. We will not impose a duty to investigate what is obvious.

■ An administrative agency's conclusions of law will be upheld on appeal if they are fairly and reasonably supported by findings of fact, *In re Orzel*, 145 Vt. 355, 359, 491 A.2d 1013, 1015 (1985), and absent a clear showing to the contrary, any decisions it makes within its expertise are presumed correct, valid and reasonable. *In re DeCato Brothers*, 149 Vt. 493, 496, 546 A.2d 1354, 1356 (1988). Here, the record supports the Board's findings and conclusion that the payments made to plaintiff's carriers constituted "wages" within the meaning of the Unemployment Compensation Law.

III.

Plaintiff's third claim of error is that the Board should have allowed it to deduct the portion of the payments made to its carriers which represented expense reimbursements.

Although plaintiff raised this issue at both hearings on this case (i.e., before the referee and the Board), it did not present any specific evidence as to expense reimbursements. Instead, it relied on a generalized argument that previous audits by the Board had estimated expenses as 55% of the lump sum payments to the motor carriers, and on statements that some portion of the contract payments logically went to the carriers' expenses. At no time was it precluded from presenting receipts or itemized statements from the carriers indicating the actual proportion of expenses to profits.

The Board stated in its decision that "as a general proposition, we agree with the employer that payments made to an individual to reimburse him for expenses incurred in performing services . . . are not 'wages' under 21 V.S.A. § 1301(12)." It noted, however, that plaintiff and its motor carriers structured their remuneration agreements so as to subsume any expense reimbursements within the flat amounts negotiated as payments for the carriers' services. The Board further noted that plaintiff failed to cite any authority for the proposition that, under these circumstances, it was the Board's obligation to verify what portion of the payments constituted actual profit, as opposed to reimbursement for expenses.

The principal reason for the enactment of the Unemployment Compensation Law was remedial, *Adams* v. *Department of Employment Security*, 139 Vt. 413, 415-16, 430 A.2d 446, 448 (1981), and it is to be liberally construed in favor of those who benefit thereunder. *Littlefield* v. *Department of Employment & Training*, 145 Vt. 247, 253, 487 A.2d 507, 510 (1984) (relying on *Grenafege* v. *Department of Employment Security*, 134 Vt. 288, 290, 357 A.2d 118, 120 (1976)). In light of the remedial nature of the statute, and the fact that plaintiff never adduced specific evidence as to the amount of expenses included in the flat-fee payments at issue, we conclude that the Board was within its discretion in refusing to allow plaintiff to deduct any part of those payments from the amounts assessable as "wages." We further agree with the Board that absent direct proof by an employer of

what portion of such a contract represents actual expenses incurred, the Board is under no duty to break down such flat-fee arrangements into expenses and profits in order to tax only the latter.

*Affirmed.*