## Raymond C. BOUCHARD v. DEPARTMENT OF EMPLOYMENT AND TRAINING

[816 A.2d 508]

No. 02-197

November 18, 2002. Claimant Raymond Bouchard appeals the decision of the Employment Security Board to deny him unemployment benefits, pursuant to 21 V.S.A. § 1344(a)(2)(B), because he was discharged from his job for gross misconduct connected with his work. We affirm the Board's decision.

Claimant was employed as an automobile mechanics teacher at Bellows Free Academy for sixteen years until December 7, 2001 when he was dismissed by the school's board of trustees. The following events gave rise to the dismissal. On November 15, 2001, claimant's teenage son, a student at the school, was emotionally distraught over a personal incident. Claimant told his son to stay home from school that day in order to calm down, but his son insisted upon attending school. Claimant first spoke to his son's teachers and guidance counselor to inform them of his son's emotional condition. That morning, while claimant was teaching a class, claimant's son burst into his classroom swearing and causing a disturbance. Claimant removed his son from the classroom and arranged a meeting for his son with the guidance counselor. Later that morning, when his son caused a disturbance in claimant's classroom for a second time, claimant arranged for his wife to pick up their son from school. Claimant's wife obtained permission from a school official to return her son to school that afternoon. After learning his son had returned to school, claimant proceeded to his son's final class of the day. When claimant's son saw him waiting he became upset,

and claimant escorted him by the arm to his office.

A verbal argument escalated to physical violence in claimant's office. There are varying versions of the fight; however, all agree that claimant pushed his son and the boy fell into some office equipment, injuring his chin. Claimant's son ran away from him as they were leaving the office and hid in the locker room. A physical education teacher found the boy and, upon his mother's request, the teacher drove him to her place of employment. When claimant could not find his son, he called the police department to report him missing. That evening two police officers arrived at claimant's house and spoke with claimant, his wife, his son and his daughter. The officers then arrested claimant on the charge of domestic assault. The next day the school suspended his employment with pay and then terminated it on December 7, 2001.

After his termination, claimant filed for unemployment benefits, and a claims adjudicator denied his claim. An appeals referee held a hearing in February of 2002 and sustained the decision to deny benefits. On appeal, the Employment Security Board affirmed the decision of the appeals referee after a hearing from which claimant was absent. This appeal followed.

In reviewing the Employment Security Board's action, this Court must, if possible, construe the Board's findings so as to support the judgment. *Carson v. Dep't of Employment Sec.*, 135 Vt. 312, 314, 376 A.2d 355, 357 (1977). Absent a clear showing to the contrary, any decisions within its expertise are presumed to be correct, valid, and reasonable. *Caledonian Record Publ'g Co. v. Dep't of Employment & Training*, 151 Vt. 256, 260, 559 A.2d 678, 681 (1989). However, we will overturn a Board decision where we find the evidence "wholly insufficient to allow the Board to reach the conclusion it did." *Pfenning v. Dep't of Employment & Training*, 151 Vt. 50, 52, 557 A.2d 897,

899 (1989). This Court will uphold the Board's factual findings unless clearly erroneous, *id.* at 52, 557 A.2d at 898, and its conclusions of law if fairly and reasonably supported by those findings of fact. *Caledonian Record Publ'g Co.*, 151 Vt. at 260, 559 A.2d at 681.

## I.

Claimant first argues that, as a matter of law, his behavior did not constitute "gross misconduct connected with his work" under 21 V.S.A. § 1344(a)(2)(B). Gross misconduct, under 21 V.S.A. § 1344, involves a "substantial disregard of the employer's interest, either wilful or culpably negligent." *In re Gray*, 127 Vt. 303, 305, 248 A.2d 693, 695 (1968). The school's faculty/staff handbook specifically prohibits the use of corporal punishment, as does 16 V.S.A. § 1161a(c), and further declares that "[t]ouching students in any way is ill advised and inappropriate." The school's student behavior policy also states:

> The Board of Trustees recognizes that learning appropriate behavior is an integral part of a student's development. Procedures and strategies used in dealing with inappropriate behavior must be just and fair; must be in the best interests of the individual and the school community; and must provide opportunities for students to learn, understand and exhibit appropriate and productive social behavior.
>
> . . . .
>
> Providing a safe, secure, orderly atmosphere conducive to effective learning is the joint responsibility of the teachers and administrators.

It is clear that if the student was not the claimant's son, the behavior would qualify as gross misconduct connected with

claimant's work. Claimant contends, however, that his behavior was not "connected with his work" because the student is his son. We disagree. Significantly, the physical altercation occurred in a school building immediately following the final class of the day, and the school has a considerable interest in "[p]roviding a safe, secure, orderly atmosphere conducive to effective learning." A teacher's responsibilities in a school do not simply cease because a bell signals that a class has ended. The Board's findings sufficiently support its conclusion that claimant engaged in gross misconduct connected with his work.

## II.

Appellant also argues that the Board's reliance upon hearsay statements and an incomplete transcript was error. We disagree, and hold that the Board had sufficient evidence before it upon which to base its decision.

Use of hearsay statements in Board hearings is acceptable practice, as the referee and the Board "shall not be bound by common law or statutory rules of evidence . . . but may conduct a hearing or trial in such manner as to ascertain the substantial rights of the parties." 21 V.S.A. § 1351. Even in instances where a Board's decision is supported only by hearsay evidence, that evidence may have sufficient indicia of reliability to support the Board's findings. See *In re Selivonik*, 164 Vt. 383, 390, 670 A.2d 831, 836 (1995) (determining that hearsay may be sole evidence in proceeding in front of Human Services Board if evidence has sufficient indicia of reliability). Accordingly, a reviewing court should determine the weight that each item of hearsay should receive, based upon that court's finding of truthfulness, reasonableness, and credibility. *Id.* (citing *Watker v. Vt. Parole Bd.*, 157 Vt. 72, 77, 596 A.2d 1277, 1280 (1991)). Factors to be considered include whether the hearsay was specific and detailed, whether the statements made were consistent, and whether the sources of the hearsay evidence were disinterested persons. *Id.*

Here, despite the incomplete transcript, the Board had access to affidavits from the two police officers who went to claimant's home the night of the incident, to testimony by claimant and his son, as well as to notes procured by claimant's supervisor. The affidavits of the police officers contained statements made by claimant, his son, his wife, his daughter, and a physical education teacher at the school. The officers' affidavits were created on the day of the incident. As an initial matter, we dispel appellant's argument that those police records are *"per se* inadmissible" hearsay. Again, the Board is not bound by those rules of evidence as may be applicable to criminal or other proceedings. 21 V.S.A. § 1351.

Claimant's supervisor made a written report of conversations with the son and the physical education teacher. The oral testimony given by claimant and his son before the appeals referee differed from both the statements contained in the police affidavits and the supervisor's notes. Both the officers and the supervisor created detailed reports fairly contemporaneously with the event. All statements made in the affidavits and notes were also consistent with each other. As such, the Board could have found the statements contained in the officers' affidavits and the supervisor's notes more credible than the version offered by claimant and his son at the referee's hearing.

Moreover, claimant did not attend the Board's hearing to object to the use of this evidence. Thus, claimant may not now argue that the Board erred by relying on such evidence. See *Harrington v. Dep't of Employment & Training*, 152 Vt. 446, 450, 566 A.2d 988, 990 (1989) (finding that because the claimant did not object to the introduction of the employer's hearsay evidence before the

Board, there was no error in the Board's reliance upon that information). Consequently, notwithstanding the incomplete transcript of the referee's hearing, the Board had before it sufficient evidence to support its findings.

### III.

Finally, claimant argues that he was denied due process because the appeals referee did not engage in fact finding; he did not receive notice of the Board's review hearing; and the transcript of the appeals hearing was incomplete. We have reviewed each of these arguments and hold them to be without merit.

*Affirmed.*