2012 VT 64

## Abdullahi Mohamed v. Fletcher Allen Health Care

[58 A.3d 222]

No. 11-293

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 10, 2012

*Kirstin K. Schoonover*, Vermont Legal Aid, Burlington, for Plaintiff-Appellee.

*Amy M. McLaughlin* and *Angela R. Clark* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Defendant-Appellant.

¶ 1. **Dooley, J.** Fletcher Allen Health Care (FAHC) appeals a decision of the Vermont Employment Security Board finding claimant, Abdullahi Mohamed, eligible for unemployment compensation benefits. The Board found that claimant's discharge for off-duty criminal conduct did not constitute gross misconduct disqualifying him from unemployment compensation benefits under 21 V.S.A. § 1344(a)(2)(B). On appeal, FAHC argues that the Legislature's recent amendments to the Vermont Unemployment Compensation Act require the Board to disqualify claimants from receiving unemployment compensation benefits when an employer can no longer retain them as a result of off-duty criminal conduct. Finding no error, we affirm.

¶ 2. Claimant was employed in the environmental services department at the FAHC hospital for approximately four years. He was responsible for cleaning certain work areas in the hospital. His work responsibilities put him in contact with patients

and staff. In September 2010, he pled guilty to two counts of lewdness after being charged with groping a young woman's breasts and vaginal area over her clothing in violation of 13 V.S.A. § 2632(a)(8). The conduct that gave rise to claimant's criminal charges did not take place on FAHC's property, and he was off duty at the time. Claimant's parole officer later informed FAHC of the criminal convictions, and on October 6, 2010, FAHC terminated claimant's employment because his "criminal conviction render[ed] [him] unsuitable for continued employment." Both parties agree that claimant was discharged because of his criminal convictions, not for any conduct that took place on FAHC premises or that involved his work at FAHC.

¶ 3. After he was discharged, claimant filed for unemployment compensation benefits. The circumstances of his discharge implicated three different, but related, statutory disqualification provisions. Two of the provisions disqualify a former employee from receiving unemployment compensation benefits for a period of time, allowing the employee to obtain benefits after the disqualification period. The third relevant provision completely disqualifies a former employee from receiving any benefits until after the employee has returned to work and earned a certain amount of money. In essence, this type of provision prevents the employee from receiving any benefits during the unemployment following the conduct for which the disqualification is imposed.

¶ 4. The first of the partial disqualification provisions applies if the employee is discharged for "misconduct connected with his or her work." 21 V.S.A. § 1344(a)(1)(A). The second applies if the employee was separated from employment "because of the consequences which flow from his or her conviction of a felony or misdemeanor." *Id.* § 1344(a)(1)(B). The complete disqualification occurs if the employee is discharged for "gross misconduct connected with his or her work." *Id.* § 1344(a)(2)(B).

¶ 5. The Department of Labor Claims Adjudicator determined that claimant was eligible for benefits, and he began receiving benefits the week ending October 30, 2010. FAHC appealed to an Administrative Law Judge (ALJ) and argued that claimant should be disqualified from receiving benefits because he was fired for gross misconduct. On December 8, 2010, the ALJ issued a decision modifying the Department's determination and finding that "[claimant's] actions, although outside of the course of his employment, directly impacted . . . the employer's ability to retain

his services." Accordingly, the ALJ determined that a disqualification period should be imposed on claimant under the simple misconduct provision of the Act, 21 V.S.A. § 1344(a)(1)(A). FAHC was not satisfied with this result and appealed to the Board, arguing that claimant should be completely disqualified from receiving benefits under the gross misconduct provision of the Act, 21 V.S.A. § 1344(a)(2)(B).

¶ 6. The Board found that the ALJ had erred by failing to provide proper notice prior to the hearing of all issues. The case was remanded to the ALJ with instructions to hold another hearing, with proper notice, addressing not only the simple misconduct provision, but the separation and gross misconduct provisions as well. After a second hearing, the ALJ concluded that there was "no direct connection" between claimant's convictions and his job and therefore the gross misconduct provision was inapplicable. The ALJ did find, however, that claimant's discharge was a "foreseeable consequence" of his criminal convictions and again applied the simple misconduct provision of the Act.[1] Again, FAHC appealed to the Board, arguing that, in light of recent amendments to the Act, the ALJ had not properly interpreted the definition of gross misconduct.

¶ 7. The Board affirmed the ALJ decision, stating that it could not "consider an off duty criminal act, not committed on the employer's premises, nor in any other way implicating the employer, as being directly related to the claimant's work performance." FAHC filed a timely appeal with this Court, and it continues to argue that claimant's off-duty criminal conduct disqualifies him from receiving unemployment compensation benefits pursuant to the gross misconduct provision of the Act.

¶ 8. As an initial matter, claimant has moved to dismiss this appeal on grounds that the case is moot. "A case becomes moot when the parties cease to maintain a legally cognizable interest in the outcome of the case." *Holton v. Dep't of Emp't & Training*, 2005 VT 42, ¶ 14, 178 Vt. 147, 878 A.2d 1051. FAHC's monetary interest in this case has ceased because, as a noncon-

---

[1] As discussed more fully *infra*, ¶ 19, the ALJ's decision regarding the simple misconduct provision is not on appeal, and we express no judgment on whether it was correct. Contrary to the dissent's implication, *post*, ¶ 21, our opinion should in no way be interpreted as endorsing the ALJ's reading of the simple misconduct provision.

tributing employer, it cannot recover funds denied on appeal. Accordingly, this case is moot under the general rule as we held in *Holton. Id.* ¶ 15. But we have recognized an exception to the rule for cases that are "'capable of repetition, yet evad[e] review.'" *In re S.H.*, 141 Vt. 278, 281, 448 A.2d 148, 149 (1982) (quoting *Roe v. Wade*, 410 U.S. 113, 125 (1973)). We have adopted a two-pronged test for this exception: "'(1) the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [must be] a reasonable expectation that the same complaining party [will] be subjected to the same action again.'" *State v. Tallman*, 148 Vt. 465, 469, 537 A.2d 422, 424 (1987) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)).

■ ¶ 9. With some exceptions, unemployment compensation benefits generally do not exceed twenty-six weeks of payments. 21 V.S.A. § 1340. The nature of the administrative process can extend the litigation of unemployment compensation disputes beyond the final distribution of benefits. In this case, FAHC was not able to appeal to this Court until several months after claimant had received his last benefits payment. Accordingly, the Board's action that FAHC challenges on appeal ceased before it could properly be challenged. In addition, it is reasonable to expect FAHC will continue to discharge employees convicted of a crime, and, as a result, it will continue to be subject to unemployment compensation payments arising from such discharges.

¶ 10. In a similar circumstance in *Holton* we held that the mootness exception did not apply because the "Board decision [on appeal] is based on a specific set of facts that are not reasonably likely to recur." *Holton*, 2005 VT 42, ¶ 17. Here, we are dealing with a question of law on which only the most basic factual elements are relevant. For these reasons, we find that both prongs of the mootness exception test are met, and we proceed to the merits. We caution, however, as we did in *State v. Schaefer*, 157 Vt. 339, 345, 599 A.2d 337, 341 (1991), that general questions of law as are present here meet the exception, but once such questions are answered, the issues in future cases become more fact specific and are less likely to fit within the exception.

■ ¶ 11. In this light, our review on appeal is focused on a question of law. "An administrative agency's conclusions of law will be upheld on appeal if they are fairly and reasonably supported

by findings of fact, and absent a clear showing to the contrary, any decisions it makes within its expertise are presumed correct, valid and reasonable." *Caledonian Record Publ'g Co. v. Dep't of Emp't & Training*, 151 Vt. 256, 260, 559 A.2d 678, 681 (1989) (citation omitted). FAHC has not challenged the factual findings on appeal[2] and, even if it had, this "Court will not disturb the findings of the Employment Security Board unless they are clearly unsupported by the evidence." *Johnson v. Dep't of Emp't Sec.*, 138 Vt. 554, 555, 420 A.2d 106, 107 (1980). "Where misconduct is asserted as a basis for disqualification for unemployment compensation benefits, the burden of proof is on the employer." *Longe v. Dep't of Emp't Sec.*, 135 Vt. 460, 461, 380 A.2d 76, 77-78 (1977).

¶ 12. As FAHC emphasizes, the Legislature has recently amended the gross misconduct disqualification in the Act. Prior to amendment, the statute required disqualification if an individual was "discharged by his or her last employing unit for gross misconduct connected with his or her work." 21 V.S.A. § 1344(a)(2)(B) (2009). We construed this language to mean that an employee's conduct must "be in substantial disregard of the employer's interest, his disregard being either willful or culpably negligent." *Favreau v. Dep't of Emp't & Training*, 151 Vt. 170, 172, 557 A.2d 909, 910 (1989). The new amendment does not modify the existing statutory language, but it adds the following definition of gross misconduct:

> For purposes of this section, "gross misconduct" means conduct directly related to the employee's work performance that demonstrates a flagrant, wanton, and intentional disregard of the employer's business interest, and that has direct and significant impact upon the employer's business interest, including but not limited to theft, fraud, intoxication, intentional serious damage to property, intentional infliction of personal injury, any conduct that constitutes a felony, or repeated incidents after written warning of either unprovoked insubordination or public use of profanity.

---

[2] The dissent's argument that the ALJ's and Board's decisions required further factual findings was not raised by FAHC, and we see no need for the case to be remanded for further findings.

2009, No. 124 (Adj. Sess.), § 7 (codified at 21 V.S.A. § 1344(a)(2)(B)). We note that both the simple misconduct and gross misconduct provisions of the law require that an employee's conduct be "connected with [the employee's] work." 21 V.S.A. § 1344(a)(1)(A), (a)(2)(B). To that general requirement, the Legislature added that misconduct is gross only if it is "directly related to the employee's work performance." *Id.* § 1344(a)(2)(B). We conclude that the decisions of the Board and the ALJ — that claimant's off-duty, off-premises, and unrelated conduct was not connected with his work at FAHC and was not directly related to his work performance — were not unreasonable. Accordingly, we affirm the Board's determination that the gross misconduct provision of the Act does not apply in this case.

¶ 13. Our decision today accords with at least two previous cases in which we have ruled that off-duty criminal conduct is not gross misconduct under the Act. The most important case is *Chamberlin v. Department of Employment Security*, in which we found that an employee who could no longer perform his job because he was incarcerated was not subject to the discharge-for-gross-misconduct disqualification. 136 Vt. 571, 572, 396 A.2d 140, 140 (1978) (per curiam). The plaintiff in that case was charged with breaking and entering, conduct which was not associated with his employment as a laborer for a tree service. *Id.* He was later sentenced to three months' imprisonment, and his "employment was terminated by reason of his incarceration." *Id.* We held that the gross misconduct disqualification provision did not apply because the Department's action was based on conduct "not connected with his work." *Id.* at 573, 396 A.2d at 141; see also *Przekaza v. Dep't of Emp't Sec.*, 136 Vt. 355, 357, 392 A.2d 421, 422 (1978) (same). We note that the language under which *Chamberlin* was decided, authorizing disqualification for misconduct "connected with his work," is essentially the language of the current statute.[3]

¶ 14. *Chamberlin* is particularly relevant in another respect. Prior to 1974, the statute had a long-standing disqualification provision applicable to claimants who were discharged "for the reason of having been found guilty of felony committed after the time of his last previous employment whether connected with his work or not." 1949, No. 132, § 1. We specifically noted in

---

[3] The only difference is that the current statute is gender inclusive.

*Chamberlin* that a 1974 amendment to the statute eliminated this disqualification provision and stated that it would be "especially inappropriate" in light of the amendment to remove this disqualification to hold that an employee could be disqualified under the gross misconduct provision for "a felony committed after the time of previous employment, whether connected with the employment or not." *Chamberlin*, 136 Vt. at 573, 396 A.2d at 141; see 1973, No. 231 (Adj. Sess.), § 1 (amending 21 V.S.A. § 1344 to eliminate the felony conviction disqualification). Thus, we declined to disqualify a claimant where the Legislature had expressed its contrary intent. *Id.* FAHC is asking us to do here exactly what we refused to do in *Chamberlin*.

¶ 15. Since *Chamberlin* and *Przekaza* were decided, the Legislature has added the disqualification provision for employees who are separated from employment because they cannot perform their job as a result of consequences of a criminal conviction. 21 V.S.A. § 1344(a)(1)(B) (added by 1981, No. 86, § 13). This amendment again created a disqualification provision for some employees convicted of crimes, but a very different one from that in effect prior to 1974. In a limited respect — that is, where the consequences of a criminal conviction interfere with the ability of an employee to perform his or her job — this new disqualification modified the holding of *Chamberlin*. In all other respects, the holding of *Chamberlin* has remained intact, and there has been no other legislative action to overrule it, at least until the 2010 amendment on which FAHC relies. Unless the 2010 amendment had that effect, *Chamberlin* governs this case.

¶ 16. FAHC argues that the 2010 amendments to the Act were enacted with a legislative intent to disqualify more claimants, and that since the Legislature amended the full disqualification provision, it must have intended to expand its scope to overrule *Chamberlin*. To support this position, FAHC points to the title of the Act — "An Act Relating to Restoring Solvency to the Unemployment Trust Fund" — as well as several specific amendments that demonstrate the Legislature's intent to rein in the cost of the unemployment compensation program. See 2009, No. 124 (Adj. Sess.), § 5 (adding 21 V.S.A. § 1340(b)); *id.* § 7 (amending 21 V.S.A. § 1344(a)(1)). For example, the Legislature increased the partial disqualification period from twelve to fifteen weeks, saving the Trust Fund three weeks worth of benefits for claimants partially disqualified. *Id.* § 7. FAHC argues that this and other

similar provisions necessarily imply that the amended definition of gross misconduct was also meant to disqualify more employees from unemployment compensation benefits and further reduce the cost of the program.

¶ 17. While FAHC may be correct regarding the overall purpose of the amendments, this purpose is not necessarily carried into every amendment, and specifically into the amendment to the full disqualification provision for gross misconduct. Thus, our normal methods of statutory construction are applicable here. "In determining legislative intent, we begin with the plain meaning of the statutory language." *State v. LeBlanc*, 171 Vt. 88, 91, 759 A.2d 991, 993 (2000). "This Court must presume that all language in a statute was drafted advisedly, and that the plain ordinary meaning of the language used was intended." *Comm. to Save the Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc.*, 137 Vt. 142, 153, 400 A.2d 1015, 1021 (1979) (citations omitted) (citing *State v. Racine*, 133 Vt. 111, 114, 329 A.2d 651, 653-54 (1974)).

¶ 18. The plain language of the new full disqualification provision still requires that misconduct be connected with the employee's work, and nothing in its language suggests that the Legislature intended to overrule *Chamberlin* in circumstances not covered by the consequences-of-conviction partial disqualification. The old provision imposed disqualification only if the gross misconduct was "connected with [an employee's] work." This language, which was the basis for *Chamberlin*, was not amended or repealed. 21 V.S.A. § 1344(a)(2)(B). The amendment added language that requires the gross misconduct to be "*directly related* to the employee's work performance." *Id.* The words "connected" and "related" are nearly synonymous, but under the new provision, "related" is modified by "directly," which functions to narrow the scope of work-related conduct that is relevant under the statute. *Id.* Additionally, under the new provision, conduct must also be related to "work performance." Accordingly, the provision does not apply when conduct is directly related to work, but not related to work performance. Finally, the conduct must have a "*direct and significant* impact upon the employer's business interest." *Id.* If anything, the 2010 amendment expanded the scope of *Chamberlin*.

¶ 19. In response to this conclusion drawn from the plain language, FAHC argues that the Board's decision is internally

inconsistent since both the simple and gross misconduct provisions of the Act require the employee's conduct to be connected to work and the Board applied the simple misconduct disqualification to claimant, but not the gross misconduct disqualification. The short answer to this argument is that the ALJ drew this distinction, and claimant never appealed the disqualification period decision to the Board. Claimant served his disqualification period, and he has not contested the disqualification in this Court. For this reason, we do not address the question of whether claimant should have been required to serve a period of disqualification based on simple misconduct. If the ALJ and the Board made an error on this question, it is not an error that FAHC can take advantage of to challenge the part of the Board decision adverse to it.

█ ¶ 20. FAHC also argues that claimant should be disqualified from receiving benefits because, in light of his criminal convictions and the place and nature of his work, FAHC had no choice but to discharge him. We do not dispute FAHC's business decision, but the question of whether claimant should have been disqualified from unemployment compensation benefits is different from the question of whether FAHC has adopted an appropriate employment policy. See *Johnson*, 138 Vt. at 556, 420 A.2d at 107 ("Misconduct that is sufficient for discharge is not necessarily sufficient to require a disqualification from benefits under the Unemployment Compensation Act."). For similar reasons, we do not find determinative FAHC's argument that the Legislature intended to prohibit the award of unemployment compensation benefits to a claimant who is unemployed because of his or her own choice or fault. See *Lane v. Dep't of Emp't Sec.*, 134 Vt. 9, 10-11, 347 A.2d 454, 455 (1975) ("The complex pattern of the whole statute is one of compensation for involuntary unemployment, with disqualification and penalties where the unemployment is due to choice or fault."). In fact, as this decision explains, the statutes create a complex relationship between employee choice or fault, however they may be determined, and the eligibility for benefits. In these circumstances, that relationship does not create the result FAHC seeks.

*Affirmed.*

¶ 21. **Reiber, C.J.**, dissenting. I respectfully dissent. In dicta, the majority acknowledges the ALJ's use of a "foreseeable" standard under 21 V.S.A. § 1344(a)(1)(B) to determine the "consequences" of

an employee's conduct under the simple-misconduct provision. Foreseeability is not a word used in the statute, and, in employing the language, neither the ALJ nor the majority make clear whether it is an objective or subjective standard. This limited interpretation adds confusion and will leave employers struggling with ambiguity under this Act when trying to interpret the majority's decision under the remaining portion of the statute presented by this appeal, § 1344(a)(2)(B).

¶ 22. The majority also follows the Board and ALJ's lead under the statute and creates what in effect is a presumption against a finding of gross misconduct under § 1344, a standard that is not there. Without sufficient analysis, the majority affirms a Board conclusion that claimant's off-duty, off-premises criminal conduct is not directly related to the employee's work performance and not connected to his work.

¶ 23. The result appears to create a bright-line rule that says any off-duty, off-premises act is not likely gross misconduct. I do not read the gross-misconduct section so broadly.

¶ 24. The Board concluded that claimant's past work performance here was "generally acceptable" but it went no further with findings or analysis regarding the impact of claimant's off-premises criminal conduct on his job performance in furtherance of his employer's ability to maintain a proper therapeutic relationship with its patients, including their safety and security. The Board merely noted that the conduct was off-site and off-duty, and that there were no reports of similar conduct by claimant with patients or staff. Such a conclusion falls short of addressing employer's concerns acknowledged in the law, and effectively rewrites the statute.

¶ 25. In the proceedings before the Board and the ALJ, employer introduced evidence on the impact of claimant's particular misconduct on his work performance. Employer noted the special nature of its relationship with patients; it referenced claimant's unfettered access to a range of patients, some in compromised states; it introduced evidence of its requirement before hiring that all employees provide ongoing consent to background checks; and it emphasized the nature of the crimes committed by claimant on a stranger. But, in response, the Board failed to address the "directly related to the employee's work performance" component of the statute, merely noting that the criminal act occurred off-site and off-duty. In affirming the

Board's conclusion of no gross misconduct on these facts the majority goes too far in applying the principle of deference to Board decisions.

¶ 26. Furthermore, the cases cited by the majority, *Przekaza v. Department of Employment Security*, 136 Vt. 355, 392 A.2d 421 (1978), and *Chamberlin v. Department of Employment Security*, 136 Vt. 571, 396 A.2d 140 (1978), are inapposite insofar as they are not gross-misconduct cases and do little to inform consideration of the work-performance relationship question raised by employer here: when is an employee's off-site, off-duty conduct "directly related to the employee's work performance"?

¶ 27. For this reason, I would reverse and remand for further findings and analysis of the issue raised by FAHC's appeal, the question of the work-performance relationship, and for this reason dissent.