*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2012-336

MARCH TERM, 2013

| | |
|---|---|
| Peter Vieta | APPEALED FROM: |
| | |
| | Employment Security Board |
| v. | |
| | |
| Department of Labor | DOCKET NO. 05-12-116-12 |
| (Med Associates, Inc., Employer) | |

In the above-entitled cause, the Clerk will enter:

Claimant appeals from the denial of his request for unemployment benefits. He argues that the Employment Security Board erred in: (1) relying on a hearsay document in reaching its decision; and (2) concluding that the conduct at issue constituted gross misconduct. We agree that the Board erred, and therefore reverse the Board's decision.

Claimant worked as a fabricator for employer for six years. Claimant was fired in March 2012 and applied for unemployment benefits. A claims adjudicator denied claimant's request, finding that claimant had been discharged for threatening a coworker, which she concluded constituted gross misconduct. Claimant appealed this decision to an administrative law judge (ALJ). The ALJ was provided, among other things, a memorandum that employer drafted and submitted in response to the Department of Labor's request for separation and payment information. This document, entitled "Notice of Termination," reflected employer's impression of the events leading to claimant's termination. The employer was not a witness to these events. According to this document, claimant told his coworker, Ryan Boutin, that he had seen Ryan[1] making fun of him, and that claimant was watching him. Ryan stated that if there was a problem, they should get a supervisor involved. According to the document, claimant replied, "If you think your [sic] f**king tough then meet me somewhere and I will kick your ass." The production manager, Thomas Boutin, later spoke to claimant, and claimant told him that "nothing is going to get done about it unless I do it myself." The Notice of Termination memorandum stated that claimant acknowledged the accuracy of the events described above, except for the part about kicking Ryan's ass. The document also recited, among other things, events that allegedly occurred after claimant was terminated.

Numerous witnesses testified at the hearing before the ALJ. Claimant's supervisor—the production manager Thomas Boutin—testified that Ryan reported being threatened by claimant. Thomas met with claimant and at first testified that during his meeting with claimant, claimant did not deny threatening Ryan.[2] According to Thomas, claimant agreed that Ryan's description

---

[1] To avoid confusion, we refer to Mr. Boutin as "Ryan" because his brother, Thomas Boutin, is the production manager.

[2] Thomas later clarified before the Board that claimant had in fact said nothing.

of events was accurate. Thomas sent claimant home for the day, and claimant was fired the following morning.

Ryan testified that claimant told him that claimant was watching him as he had seen Ryan making fun of him. Ryan asked claimant if he was serious and replied that if there was a problem, they should get a supervisor involved. Ryan went to the supervisor's office and wrote down what had occurred. Ryan stated that claimant wanted to fight with him, and that claimant had essentially said "if you think you're tough, meet me somewhere, and I'll take, you know, care of it." Ryan interpreted the statement as an intent to fight.

Claimant presented a different version of events. He testified that Ryan mocked his disability on a daily basis at work. On the day in question, claimant told Ryan, "I see what you're doing." Ryan replied, "If there's a problem, I will kick your f**king ass." Claimant responded that he would meet Ryan after work and settle it because he was tired of being disrespected at work. Claimant complained that employer did not listen to his side of the story and fired him instead. Claimant also challenged the veracity of the information contained in the "Notice of Termination" submitted by employer. Claimant added that he had told his employer previously about being mistreated by other employees and that nothing was done about it. Thomas acknowledged that claimant had complained to him before about being treated in a disrespectful manner in the workplace and that they had had a team meeting about bullying.

Following the hearing, the ALJ sustained the decision of the claims adjudicator. She essentially adopted employer's version of events, and found in material part that claimant told Ryan to meet him someplace after work and he would kick Ryan's ass. The ALJ also found that after learning of his termination, claimant told the supervisor and manager that "nobody does that to him," and that they "should sleep with their eyes open." Based on these findings, the ALJ concluded that claimant was terminated for gross misconduct. She found that claimant threatened Ryan and Thomas with bodily injury. She considered such behavior to be workplace violence, and concluded that claimant's actions therefore rose to the level of gross misconduct. Claimant appealed to the Employment Security Board, asserting that the ALJ's findings were erroneous. The Board conducted an on-the-record review, and adopted the ALJ's findings and conclusions as its own. This appeal followed.

Claimant first argues that the ALJ's finding that he threatened to kick Ryan's ass is not sufficiently supported by the record. He maintains that the ALJ ignored his and Ryan's direct testimony and instead improperly and exclusively relied on employer's hearsay document.[3]

On review, we "will uphold the Board's factual findings unless clearly erroneous, and its conclusions of law if fairly and reasonably supported by those findings of fact." Bouchard v. Dep't of Emp't & Training, 174 Vt. 588, 589 (2002) (citations omitted). As discussed below, we conclude that the ALJ's key finding is based on unreliable hearsay.

Although the ALJ and the Board are not bound by the rules of evidence, see 21 V.S.A. § 1351, we have expressed our concern about "exclusive reliance on hearsay evidence where it is disputed by the claimant." Harrington v. Dep't of Emp't & Training, 152 Vt. 446, 449 (1989). When the Board relies exclusively on hearsay evidence, the evidence must be sufficiently reliable to support the Board's findings. Bouchard, 174 Vt. at 590. Thus, "a reviewing court

---

[3] We reject employer's assertion that claimant waived this argument by failing to raise it below. While claimant did not use the word hearsay, he did object to the admission of this document before the ALJ, and he challenged the version of events set forth in this document.

2

should determine the weight that each item of hearsay should receive, based upon that court's finding of truthfulness, reasonableness, and credibility." Id. In conducting such analysis, we consider "whether the hearsay was specific and detailed, whether the statements made were consistent, and whether the sources of the hearsay evidence were disinterested persons." Id.

The ALJ relied solely on employer's "Notice of Termination" memorandum in finding that claimant threatened to kick Ryan's ass.[4] The proffered hearsay evidence was not sufficiently reliable to support the ALJ's findings. First, the document was produced by employer, which plainly has a financial interest in the outcome of the unemployment compensation proceedings. Additionally, the document appears to have been drafted by the alleged victim's brother. The hearsay statements contained in the document, while specific, were not consistent with Ryan's testimony at the hearing. They were also contradicted by claimant's testimony. Neither claimant nor Ryan drafted or signed the "Notice of Termination." Instead, it was signed by individuals who were not present during the confrontation. Given these factors, we cannot conclude that this document provided a reasonable basis to support the ALJ's findings that claimant threatened to kick his coworker's ass. Given that the Board's key finding lacks record support, its conclusion cannot stand. On the basis of the findings and evidence, excluding the finding that improperly relied on the "Notice of Termination" memorandum, the remaining record in this case is unclear and does not support a finding of gross misconduct. We therefore reverse the Board's decision. Given our conclusion, we do not reach claimant's second argument.

Reversed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

---

[4] The ALJ also based her decision on findings concerning claimant's post-termination behavior. This behavior did not form the basis of employer's decision to discharge claimant and it is not relevant here to the question of discharge.