*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-468

MAY TERM, 2016

| | |
|---|---|
| Timothy Farr | }    APPEALED FROM: |
| | } |
| | }    Employment Security Board |
|    v. | } |
| | } |
| Department of Labor | }    DOCKET NO. 09-15-042-06 |
| (SL Uno of Burlington, Inc., t/a Pizzeria | } |
| Uno, Employer) | } |

In the above-entitled cause, the Clerk will enter:

Claimant appeals pro se from a decision of the Employment Security Board disqualifying him from unemployment benefits for a period of approximately nine weeks because he was discharged by his employer for "misconduct connected with his or her work" under 21 V.S.A. § 1344(a)(1)(A). We affirm.

Claimant worked for employer—a restaurant—as a server and member of the kitchen staff for a little more than one year. He was discharged on July 30, 2015, and subsequently filed a claim for unemployment benefits. Following a fact-finding interview, a claims adjudicator found that, although claimant was discharged for "excessive tardiness," his actions represented "poor judgment" but not misconduct in substantial disregard of employer's interests. Accordingly, the claims adjudicator did not disqualify claimant from any benefits.

Employer appealed, and an administrative law judge (ALJ) held a hearing in October 2015. The only witness was employer's general manager, who testified that the decision to discharge claimant was made as a result of claimant's "[h]abitual absenteeism" for which he had been "spoken to on a number of occasions." The manager testified that there were days when claimant did not come to work, and employer had to cover those. There were times that he would call and say that he was running late. The manager testified that he spoke to claimant on a "couple of occasions" about the need to get to work on time. He recalled an occasion in June 2015 when he attempted to talk with claimant about his tardiness and other issues and claimant "became condescending . . . and defensive," and suggested maybe the manager should just fire him. As a result, claimant was not scheduled for any shifts the next week, and they later spoke again about claimant's need "to be more reliable." On another occasion, claimant came to work in sandals rather than proper shoes, and was sent home. On his last day of work, July 30, 2015, claimant called to say that his bus was in traffic and he was going to be late. When claimant arrived, the manager again spoke with him about being habitually late. That day, claimant told the manager that he would not "have me for your punching bag much longer" and that he had applications in to two other restaurants. The manager subsequently overheard claimant relaying the contents of their conversation to other employees, and at that point the manager "pulled

[claimant] into the office and let him just know that I could not continue to have him working here with that kind of behavior." He was discharged that day.

Claimant did not appear at the ALJ hearing. Without objection, the ALJ admitted two exhibits submitted by claimant setting forth his position concerning the discharge. One was a "fact finding form" prepared by the claims adjudicator in which claimant responded to a series of pre-prepared questions. In it, claimant indicated that he had been told in April 2015 that "if I was going to be late due to the bus system, to call and let them know," and that he routinely called "whenever the bus was running even two minutes late." He stated that, on July 30, 2015, he called to report that the bus was eight to ten minutes late, and "was told that was fine." Claimant indicated that he was aware of no policy regarding "warnings" other than to "give them advance notice" if late. He also indicated that he was aware of other employees who had been late and had been given multiple warnings without any action being taken.

The other document was a two-page letter from claimant to the claims adjudicator, prepared in advance of their meeting, setting forth in more detail his work history at the restaurant and his recollection of the events on his last day of work. He stated that he had received no prior disciplinary action or reprimands; that other employees had routinely run late and called ahead of time without receiving any discipline; and that he had followed this routine on the day of his discharge, working until he was fired about an hour into his shift. Claimant attached a text message to the letter from a co-worker stating that he had been "written up" ten times for being late but had apparently not been disciplined. Claimant alleged that the he had been "targeted" for reasons unrelated to his tardiness.

The ALJ issued a written decision in October 2015. The ALJ's findings largely track the manager's testimony that claimant had been late on a number of occasions, and had been spoken to about employer's concerns over his punctuality and attendance. The ALJ further found that while it was "unfortunate" that claimant's bus arrived late, "there was nothing preventing [claimant] from taking an earlier bus." The ALJ concluded that an employer's "basic expectation[] . . . is that workers will arrive on time when scheduled," and that "[b]y continuing to be late, despite warnings, [claimant's] actions were in disregard of the employer's interests, and, hence, misconduct under the statute." Accordingly, the ALJ reversed the decision of the claims adjudicator, and ruled that claimant was disqualified from benefits for a period of weeks under the provisions of 21 V.S.A. §§1340 and 1344.

Claimant appealed to the Board. He did not attend the hearing on November 10, 2015, but submitted a letter, marked received by the Board on November 9, 2015. Claimant argued that the record evidence demonstrated he was not terminated for misconduct. The Board issued a written decision on November 24, 2015. The Board stated that it had reviewed the evidence before the ALJ, and had determined there was sufficient evidence to support the findings, and that the findings supported the ALJ's conclusions, which it adopted as its own. This appeal followed.

This Court "will not disturb the findings of the Employment Security Board unless they are clearly unsupported by the evidence." Mohamed v. Fletcher Allen Health Care, 2012 VT 64, ¶ 11, 192 Vt. 204 (quotation omitted). "Where misconduct is asserted as a basis for disqualification for unemployment compensation benefits, the burden of proof is on the employer." Id. (quotation omitted). "Misconduct that is sufficient for discharge is not necessarily sufficient to require a disqualification from benefits under the Unemployment Compensation Act." Johnson v. Dep't of Emp't Sec., 138 Vt. 554, 556 (1980) (per curiam). To

be disqualified from benefits, "an employee's misconduct must be in substantial disregard of the employer's interests, his disregard being either willful or culpably negligent." Favreau v. Dep't of Emp't & Training, 151 Vt. 170, 172 (1989).

We conclude that, assessed in light of these standards and the record evidence, the Board's findings are sufficient to support its decision and are supported by the evidence. Repeated absences and tardiness following warnings by the employer may be sufficient to constitute disqualifying misconduct under the statute. In this case, claimant asserted through exhibits admitted by the ALJ and in his written argument to the Board, that employer had followed a practice of allowing him and other employees to report a few minutes late if they called ahead, and further alleged that his discharge was for reasons unrelated to his tardiness. But his manager testified to the contrary. In his argument, claimant emphasizes that the employer's position is not supported by any documentary evidence, and that this is a case of his word versus the manager's. That may be true, but is not a basis for reversing the Board's determination. The ALJ and the Board are free to make judgments about credibility and to weigh the persuasive effect of the evidence. Branch v. Dep't of Emp't Sec., 142 Vt. 609, 610 (1983). This Court's role is not to reevaluate the credibility of witnesses or the persuasiveness of the evidence. Cabot v. Cabot, 166 Vt. 485, 497 (1997). In this case, the Board's findings, although contrary to claimant's position, are supported by the manager's testimony. We cannot conclude that they are "clearly unsupported by the evidence." Mohamed, 2012 VT 64, ¶ 11.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice